Foster L. Balch, Receiver, *vs.* Eugene M. Wilson and another.

### October 4, 1878.

**Time, when Material, must be Pleaded.**—The occurrence of a fact at a particular time, if material, will not be presumed in favor of the pleader in the absence of a proper allegation in the pleading.

**Insolvent National Banks—Rights and Liabilities fixed, when.**—When a banking association organized under the banking law of congress becomes insolvent and passes into the hands of a receiver under the provisions of that law, the respective rights and liabilities then existing between it and its creditors and debtors become fixed, and all its property and assets thereupon subject, after satisfying the prior claim, if

any, of the government on account of its notes, to disposal and ratable distribution among all its general creditors, upon the principle of equality. No subsequent lien can be created, or right or preference obtained, in respect to any such its assets or property, after the appointment of a receiver.

**Same—Set-off as against Receiver.**—A due joint note, then belonging to the bank, against defendants W. and K., cannot afterwards be made the subject of an equitable set-off in their favor against notes not then due, held by them against the bank and other insolvent makers jointly; the latter having been owned, at the time the receiver was appointed, by one of the defendants only, and having no connection with the former, having originated in a separate and distinct transaction.

The plaintiff, as receiver of the National Exchange Bank of Minneapolis, brought this action in the district court for Hennepin county, against the defendants Eugene M. Wilson and William M. Kimball, on a promissory note for $500 made by them to the bank, bearing date April 18, 1877, and payable one month thereafter. The complaint shows that on April 24, 1877, the bank suspended payment and closed its doors, and that on May 29, 1877, the plaintiff was appointed receiver, by the comptroller of the currency, pursuant to the provisions of the National-Bank Act, and holds the note as such receiver.

The defendants in their answer admit the statements in the complaint, and allege that on September 8, 1876, the defendant Kimball recovered judgment against T. W. Tidd and E. B. Fales, partners as Tidd & Fales, for $3,130.90, and on March 3, 1877, caused execution thereon to be levied on a large quantity of saw-logs in the possession of the bank, being portion of a larger quantity, which, on March 16, 1876, Tidd & Fales had transferred to the bank to secure a present indebtedness and future advances, all which had prior to the levy been paid out of the proceeds of sales of the property so transferred. That Kimball also caused proceedings supplementary to the execution to be instituted, and summoned the bank to appear before the court and make disclosure of all property of Tidd & Fales under its control, etc., and caused the bank to be enjoined from disposing of any such property.

That on April 16, 1877, the bank, desiring a release of the levy and a dismissal of the supplementary proceedings, and an extension of time for payment of the judgment, agreed with Kimball that in consideration of such release, dismissal and extension, it would join with Tidd & Fales in executing to Kimball three promissory notes for $1100 each, dated April 16, 1877, and payable, respectively, twelve, fifteen and eighteen months thereafter. Pursuant to the agreement, the notes were made by Tidd & Fales payable to their own order, were endorsed by the cashier of the bank, as such, and afterwards delivered by the bank to Kimball, who caused the levy to be released, the other proceedings to be dismissed, and the judgment to be satisfied. That prior to the commencement of this action, Kimball, for a good consideration, assigned one-half of the notes to his codefendant Wilson, and that no part of the notes has been paid. That a claim for the amount of the notes was duly made upon the plaintiff as receiver, at the time and in the manner required by law, and was by him disallowed; that the assets of the bank are insufficient to pay its indebtedness, and there will be nothing left to pay these notes when their validity as claims against the bank may have been established by action at law; and that Tidd & Fales are insolvent and can pay no part of the notes.

The defendants pray judgment that so much of their demand as may be necessary be set off against plaintiff's demand in payment of the same, and for general relief. A demurrer to the answer was sustained by *Young*, J., and the defendants appealed.

*Wilson & Lawrence*, for appellants.

*Atwater & Babcock*, for respondent.

CORNELL, J. The note sued on was a joint note of the defendants given to the bank, dated on April 18, 1877, and payable one month after its date. The bank was put into the hands of the receiver, under the national banking law, on May 29, 1877, which was after the maturity of said note. Giving to the averments of the answer the most favorable

construction claimed by defendants, the three several notes set up as a ground for the equitable relief sought, originated in the settlement of a transaction between the defendant Kimball alone, and the bank and Tidd & Fales. Said notes were given to Kimball by the bank and Tidd & Fales, as joint makers, being dated April 16, 1877, and payable respectively in twelve, fifteen and eighteen months next thereafter, with interest. Neither of these notes were due at the time the receiver was appointed, nor were they or either of them due when this action was commenced, which appears to have been in November, 1877. It is alleged in the answer that the defendant Kimball transferred or assigned one-half of these notes to the defendant Wilson, prior to the commencement of this action, but whether before or after the appointment of the receiver is not stated. It cannot be assumed that Wilson acquired any interest in the notes prior to that time, as no such fact is alleged in the pleading. The insolvency of both the bank and Tidd & Fales, the other makers of the notes, is properly alleged. The further fact is alleged, though clearly an immaterial one in this action, that a claim for the amount of these notes has been duly made to the receiver, and disallowed. Upon this state of facts, the defendants ask that the plaintiff be estopped from collecting his demand against the defendants, and that so much of the defendants' demand as may be necessary be set off against that due to the bank in payment of the same, and for other and further relief as may seem just.

The respective rights and liabilities existing between the bank and its creditors and debtors became fixed when its insolvency occurred, and it passed into the hands of the receiver appointed by the comptroller of the currency. All the property and assets of the association then became a fund legally dedicated, first, to the satisfaction of any claim of the United States government for any deficiency in the proceeds of the bonds pledged for the redemption of its notes to meet the amount necessary to be expended for that purpose; and, sec-

ond, for a ratable distribution of the balance among its general creditors, upon the principle of equality. No subsequent lien could be created, or right or preference obtained, in respect to any of the assets or property of the bank, which did not exist at that time. *National Bank* v. *Colby*, 21 Wall. 609. The rights of the parties hereto, then, must be determined with reference to the conditon of things existing when the receiver herein was appointed; and unless the defendant Kimball, the then holder and owner of the notes against the bank, had at that time the equitable right of set-off here claimed, it is clear that it does not exist in favor of the defendants. *U. S. Trust Co.* v. *Harris*, 2 Bosw. 76; *Clark* v. *Brockway*, 3 Keyes, 13; *Matter of Middle-District Bank*, 1 Paige, 585; *Clarke* v. *Hawkins*, 5 R. I. 219.

At that time the joint note of the defendants to the bank was overdue. If it had been paid at maturity according to its terms, the proceeds would have passed into the hands of the receiver as cash assets, subject, without doubt, to be equally and ratably distributed among the general creditors of the association, after settlement of the prior claim of the government according to the provisions of the national banking law. Kimball, the then owner of the claims against the bank, could not have acquired any preference over its other general creditors in respect to the moneys thus received by it on account of the payment of the note against the defendants. Their failure to pay it when due ought not to place them in any better position than they would have occupied had they faithfully discharged their own obligation at maturity, according to its terms. It would be a strange principle in equity which would enable a party to derive an advantage from his own delinquency which he could not otherwise have enjoyed. When the receiver was appointed, Kimball was the sole owner of the three notes against the bank, which are now sought to be used as an equitable offset to its claim against the defendants. This claim was overdue. It was a joint one in favor of the bank against both defendants. It had no connection

with the notes then belonging to Kimball, having originated in an entirely separate and distinct transaction. These notes were joint demands against the bank and Tidd & Fales, and not yet due. The respective claims being thus wholly independent of each other, and between different parties, they do not occupy the position of mutual demands between the same parties, originating in a mutual credit, and there was clearly no connection between them upon which, under any circumstances, a court of equity could act for the purpose of compelling an equitable offset, or that would justify the application of any other rules in respect to the matter of set-off than those recognized at law. 2 Story Eq. Jur., §§ 14–34 *et seq.*; *Birdsall* v. *Fischer*, 17 Minn. 100; *Greene* v. *Darling*, 5 Mason, 201.

The mere fact that the bank and Tidd & Fales became insolvent after giving their joint notes to Kimball could not operate to change the character or terms of these obligations, or hasten their maturity. Hence, if the due note sued on was the individual obligation of Kimball, this circumstance of insolvency alone would furnish no equitable ground for postponing its payment till the maturity of his notes against the bank, or for compelling an application of the former upon the latter in the way of set-off. *Bradley* v. *Angel*, 3 N. Y. 475. But in this case, the note due the bank was not the individual note of Kimball, but the joint note of both defendants, and certainly he had no right, when the receiver was appointed, to insist upon a suspension of the payment of such joint obligation, because he had individual claims against the bank and others, payable at a future day.

For these reasons, the demurrer to the answer was properly overruled, and the order appealed from is affirmed.