## ARMSTRONG *v.* SCOTT *et al.*

*(Circuit Court, S. D. Ohio, W. D.* September 3, 1888.)

1. **BANKS AND BANKING—NATIONAL BANKS—INSOLVENCY — ACTIONS — SET-OFF AND COUNTER-CLAIM.**
   Rev. St. U. S. § 5242, makes payments of money by an insolvent national bank to shareholders or creditors, with a view to preference, or to evading the disposition of assets as required by statute, null and void. Sections 5234 and 5236 require the receiver, after collecting debts, etc., to turn over all money to the United States treasurer for a ratable distribution among creditors. *Held,* that funds received on the discounting of a note, and deposited with the dis- counting bank, subject to the check of the depositor, and which had been drawn upon by him, but were intended by him to meet the note when due, cannot be pleaded as a set-off in an action on the note brought by the re- ceiver of the discounting bank, who received the note before maturity; and this conclusion is not affected by the provision of Code Civil Proc. Ohio, which provides that a cross-demand which might be pleaded as a counter- claim or set-off shall not be extinguished as such by the assignment or death of either party, as this provision does not apply to the assignment of a demand before maturity.

2. **NEGOTIABLE INSTRUMENTS—ACCOMMODATION PAPER—RIGHTS OF MAKER.**
   The fact that one who signed as maker of a note was in fact only an accom- modation maker, and signed, without consideration, in order that the indorser, who was really the principal debtor, might get the note discounted, and that these facts were known to the bank which discounted the note at the time of discounting, is no defense for such accommodation maker in an action on the note.

3. **SAME—AGREEMENTS PRIOR TO EXECUTION.**
   An agreement, made prior to the signing of a note, that the bank discount- ing the note would regard it as the obligation of the indorser, and would look only to the indorser for payment, is no defense for the principal on the note in an action thereon, both because the agreement was prior to the signing, and also was in conflict with the note.

At Law.

*E. W. Kittredge* and *W. B. Burnet,* for plaintiff.

*Paxton & Warrington,* for defendants.

SAGE, J. The plaintiff's action is upon a promissory note for $10,000, made by the defendant Scott, and discounted by the Fidelity National Bank for account of the indorser, the defendant the Farmers' & Me- chanics' State Bank. The note came to the possession of the plaintiff before its maturity. The amended answer of Scott is that, at the request of his co-defendant, he being its cashier, he signed the note as maker, without consideration, and solely to enable his co-defendant to have it discounted, all which was at the time known to the Fidelity National Bank. In other words, Scott was an accommodation maker, and that fact was at the time known to the Fidelity National Bank. This is no defense. The answer also sets up that the Fidelity Bank took the note under an agreement that it was the obligation of the defendant bank, and that the Fidelity Bank would look to said bank only for payment. But it appears from the answer that this agreement is evidenced by corre- spondence between the Fidelity Bank and the defendant bank, prior to the signing of the note, which is fatal to the plea, as is also the fact that

the agreement is in conflict with the note. The amended answer of the defendant bank sets up the facts pleaded by its co-defendant Scott, who, it alleges, signed the note as maker, "without consideration, and merely for the purpose of complying with a custom of the Fidelity National Bank, requiring two names upon paper discounted." These allegations establish, as against the demurrer, that the defendant bank is the principal debtor, and that Scott, although the maker, is only a surety. The answer further sets up that the proceeds of the discount of the note were placed by the Fidelity Bank to the credit of the defendant bank, subject to check or draft, "and to pay and meet said note when the same became due;" that the defendant bank drew upon said proceeds for $1,009.23, leaving a balance of $8,809.94, which has not been drawn against, and that at the maturity of the note defendant tendered to the plaintiff the sum of $1,190.06, the balance due on the note, after deducting said sum of $8,809.94, which "was permitted to remain with said Fidelity National Bank to meet a like amount to become due upon said note." The tender was refused, and the defendant now brings into court said balance for the plaintiff, and prays that the $8,809.94 may be allowed by way of set-off against the note. The plaintiff demurs to each of these answers for insufficiency.

The question suggested upon the argument of the demurrer, whether the defendant bank, being the indorser, is entitled to plead the set-off, is disposed of by the finding already made, that the defendant bank is in fact the principal debtor. It is contended for the defendant bank that the receiver took the note subject to all equities. That is true as to all equities in favor of the defendant bank and against the note at the time when the receiver took possession. The note was not then due. When it was delivered to the Fidelity National Bank, and the proceeds credited to the defendant bank, the note and the proceeds thereby became at once separate, distinct, and altogether independent each of the other. The fact that the defendant bank voluntarily left the greater portion of the proceeds on deposit to be applied towards payment of the note did not create any equity against the note, for the defendant retained the right to draw out the entire balance at any time. In *Hade* v. *McVay*, 31 Ohio St. 231, the supreme court of Ohio holds that the receiver of a national bank holds to the bank and its creditors the relation, substantially, of a statutory assignee, and that "a right of set-off, perfect and available against the bank at the time of his appointment as receiver, is not affected by the bank's insolvency. He succeeds only to the rights of the bank existing at the time it goes into liquidation." The provision of the Ohio Code of Civil Procedure that, "when cross-demands have existed between persons under such circumstances that if one had brought an action against the other a counter-claim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other, but the two demands must be deemed compensated so far as they equal each other," does not apply to the assignment of a demand before its maturity. Mr. Pomeroy, in his work on Remedies and Remedial Rights, says, at section 163:

"If an insolvent holder of a claim not yet matured assigns the same before maturing, and the debtor at the time of this transfer holds a similar claim against the assignor, which is then due and payable, his right of set-off against the assignee, when the latter's cause of action arises, is preserved and protected."

Numerous cases are cited in support of this rule, which is said to be founded upon equitable considerations, but it does not apply here, for the reason that the national bank law, recognizing only the government and the bank-note holders as preferred creditors, makes all payments of money by a national bank to its shareholders or creditors after the commission of an act of insolvency, or in contemplation thereof, "with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes," utterly null and void. Rev. St. U. S. § 5242. The provisions of sections 5234 and 5236 require the receiver to take possession of the assets of the bank, collect all debts, sell all property, real and personal, and pay over all money so made to the treasurer of the United States, subject to the order of the comptroller, whose duty it is, after refunding to the United States any deficiency in redeeming the notes of the bank, to make a ratable dividend of the money among the creditors. The unmistakable force and meaning of the law is to place all unsecured creditors upon the same footing of equality. When the plaintiff was appointed receiver, the defendant was in the list of unsecured depositors, to whom payment, the bank being insolvent, was prohibited. The defendant had then no right of set-off, nor any equity against its note, not then matured, which passed to the receiver. To allow the set-off, now that the note has matured, and thereby make payment in full to the defendant in part discharge of its obligation to the bank, would be contrary, not only to the policy of the law, but also to the plain meaning of its provisions. See *Bank* v. *Taylor*, 56 Pa. St. 14. The demurrers are sustained. Judgment will be entered in favor of the plaintiff for the amount claimed in the petition, against the defendant bank as principal, and the defendant Scott as surety.

The circuit judge concurs in the conclusions of this opinion, which is in accord with his opinion in *Bung Co.* v. *Armstrong*, 34 Fed. Rep. 94.