LON V. STEPHENS, Receiver of the FIFTH NATIONAL BANK, Appellant, v. G. SCHUCHMANN et al., Respondents.

St. Louis Court of Appeals, November 13, 1888.

1. **National Bank: INSOLVENT: SET-OFF.** In a suit by the receiver of an insolvent national bank against the endorser of a promissory note, the defendant cannot defend by a claim of set-off for moneys deposited in the bank.

2. **National Bank: INSOLVENT: RECEIVER'S RIGHTS.** The receiver of an insolvent national bank succeeds to the rights of the bank existing at the time when it went into liquidation. A claim in favor of the bank which first matures in the hands of the receiver cannot be subjected by way of set-off to a claim which existed against it before the receiver's rights accrued.

*Appeal from the St. Louis City Circuit Court.*—HON. GEORGE W. LUBKE, Judge.

REVERSED AND REMANDED.

*Draffen & Williams* and *D. W. Shackleford*, for the appellant.

"A right of set-off, perfect and available against the bank at the time of his appointment as receiver, is not affected by the bank's insolvency." *Hade v. McVay*, 31 Ohio St. 231, 238; *Miner v. Miner*, 8 Gratt. 1; *Fry v. Evans*, 8 Wend. 530; *Merritt v. Seaman*, 6 N. Y. 168; *Jordan v. Bank*, 74 N. Y. 467. The maker of a promissory note, not due at the time of the bank's insolvency, and against which no set-off then existed,

ought not, by a simple non-payment of the note at maturity, either by arrangement with the endorser or otherwise, to be permitted to give the endorser, who had a deposit in the bank, a preference over other creditors. This is contrary to the intent of the "national bank act." *Bank v. Colby*, 21 Wall. 609 ; *Balch v. Wilson*, 25 Minn. 299.

*Klein & Fisse*, for the respondent.

One of two defendants jointly sued may plead as a set-off a separate demand due him from the plaintiff. R. S. 1879, sec. 3871 ; *Austin v. Feland*, 8 Mo. 309 ; *Kent v. Rogers*, 24 Mo. 306 ; *Mortland v. Holton*, 44 Mo. 58. The receiver of a national bank takes the assets of the bank subject to all set-offs existing against the bank at the time of his appointment. High on Receivers, sec. 359 ; *Cox v. Volkert*, 86 Mo. 505 ; *Smith v. Spengler*, 83 Mo. 408. The title of the receiver to the assets of the bank is no more than the title of the bank. As stated in High on Receivers, sec. 359 : "As regards the title acquired by a receiver of a national bank thus appointed, the true doctrine seems to be that he holds only such title and estate as the bank itself had in its assets, his title being similar in this respect to that of an assignee in bankruptcy." High on Receivers, sec. 247. Therefore, all demands are in his hands subject to all set-offs which existed against the bank. *Platt v. Bentley*, 11 Am. L. Reg. [N. S.] 171 ; *Stewart v. Bank*, 6 *Week. Notes*, 399 ; *Arnold v. Niess*, 36 Leg. Intell. 437. It was admitted at the trial that the demand pleaded as a set-off was due at the time of the commencement of the action. As said in *Smith v. Spengler*, 83 Mo. 412 : "It would seem to be sufficient if the right of set-off existed in favor of the defendant and against the plaintiff, at the time of the commencement of the suit, and had then become due." *Reppy v. Reppy*, 46 Mo. 571 ; Waterman on Set-off, sec. 381.

PEERS, J., delivered the opinion of the court.

The plaintiff instituted this action to recover upon certain notes held by him as receiver of the Fifth National Bank of St. Louis, amounting together to the sum of fifteen hundred dollars, executed by the defendant Schuchmann, and endorsed by the defendant Soderer. The facts of the execution and endorsement of the notes were admitted; but the defendant Soderer in his separate answer pleaded a set-off against the plaintiff's claim as follows: "And for a further and additional defense to the several causes of action set forth in the plaintiff's petition, and as a set-off and counter-claim to the same, this defendant says that, on the seventh day of November, 1887, this defendant had on deposit in the said Fifth National Bank of St. Louis, the sum of twelve hundred and thirty-six dollars and fifty-eight cents, which amount was, on said seventh day of November, 1887, due and payable from the said Fifth National Bank of St. Louis to this defendant. The defendant further says that the said sum of money is still due him from the said Fifth National Bank of St. Louis, and that on or about the thirteenth day of January, 1888, this defendant notified the said plaintiff Lon V. Stephens, receiver of the Fifth National Bank, that he stood ready and consented that the said receiver should apply the balance that was due to this defendant from the said Fifth National Bank, and so standing to his credit in said bank, namely, the said sum of $1236.58, in satisfaction and payment *pro tanto* of the two notes mentioned and described in the first and second causes of action of the plaintiff's petition herein, and on said day this defendant did then and there tender in cash to the said plaintiff Lon V. Stephens, receiver as aforesaid, the difference between the amounts of said notes and the protest fee thereon and interest accrued to said date, amounting in all to $1509.60, on the day of said tender, which difference on the day of said tender amounted to the sum of two hundred and

seventy-three dollars and two cents, which last-named sum was on said day tendered to the said plaintiff by the defendant in satisfaction and discharge of all liability on the part of this defendant upon said notes; but the said plaintiff, receiver as aforesaid, refused and declined to accept said sum of $273.02 in satisfaction and discharge, and refused to allow this defendant the said set-off or counter-claim of $1236.58, so due him from the said bank. And this defendant now here offers and pays into court for the benefit of said plaintiff the said sum of $273.02, and consents that judgment may be rendered against him for said amount with costs. Wherefore having fully answered, this defendant now prays judgment accordingly, that the said plaintiff may be required to deliver and surrender to him the said two promissory notes upon payment of said $273.02, the balance due thereon, as aforesaid, from this defendant, and for such other and further relief as the defendant may be entitled to under the circumstances of this case."

The notes sued on having been introduced, the defendants were proceeding to offer testimony in support of the set-off pleaded when plaintiff's counsel admitted the truth of the matters pleaded in the answer. Thereupon the court rendered judgment in favor of plaintiff as follows: Upon the first count of the petition for the sum of $1,004.77, and upon the second count for the sum of $504.83, amounting in all to the sum of $1,509.60; and the court rendered judgment upon the counter-claim in favor of the defendants for the sum of $1,236.58, and awarded an execution in favor of the plaintiff for the amount of the difference between the two findings, to-wit, the sum of $273.02, and for the costs of suit. From this judgment the plaintiff appeals.

It will be seen that there is but one question presented in this record, viz., whether the set-off pleaded was properly allowed against the plaintiff's claim. There can be no question, under the statutes of this state, that one of two defendants jointly sued may plead as a set-off a separate demand due him from the plaintiff. The supreme court of this state has so held in a

line of decisions beginning with the case of *Austin v. Feland*, 8 Mo. 309, and continuing up to the case of *Mortland v. Holton*, 44 Mo. 58, and we know of no contrary authority in any of the later decisions. It seems, however, that the question as here presented is not governed by the statute of this state nor the decisions upon that statute, but must be determined by the act of congress under which the plaintiff bank was authorized to transact its business, and the decisions of the courts as bearing upon that act.

The act of congress prescribes the conditions upon which national banks shall be created, the powers they possess and consequences of their failure to meet their obligations. In our judgment persons dealing with these institutions can only acquire and enforce rights against them under the limitations designated in the act above referred to.

Section 5234 of this act provides for the appointment of a receiver of an insolvent bank, who, under the directions of the comptroller of the currency, shall take possession of the books, records and assets of every description of such association, collect all debts, dues and claims belonging to it, sell its real and personal property and pay over the money to the treasurer of the United States, subject to the order of the comptroller of the currency. Provision is then made for a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and shall make further dividends as the proceeds of the assets are paid over to him, and the remainder of the proceeds, if any, shall be paid to the shareholders. In order to further secure an equal distribution of the assets of the bank, section 5242 declares all transfers of the notes, bonds, bills of exchange owing to any national banking association, or of deposit to its credit ; all assignments of mortgages, sureties on real estate, or of judgments or

decrees in its favor ; all deposits of money or other valuable thing for its use or for the use of any of its shareholders, or creditors, and all payments of money to either, made after the commission of an act of insolvency or in contemplation thereof, made with a view to the *preference of one creditor to another*, except in payment of its circulating notes, shall be *utterly null and void*.

It is perfectly clear from this that the act of congress establishing these banks intended : (1) To secure the government for the payment of the notes, and (2) to secure equality among the creditors of the bank in the division of the property and proceeds thereof ; that there should be no preference of one creditor above another ; all should share ratably in the proceeds of the association. The provisions are just and equitable and commend themselves to the mind of every lover of equal and exact justice. Mr. Justice FIELD, in *National Bank v. Colby*, 21 Wall. 609, says : "This design would be defeated if a preference in the application of the assets could be obtained by adversary proceedings. The priority of the United States and the ratable distribution among the general creditors, so studiously provided for in the act, would in that case be lost."

If the theory of the lower court is correct then its judgment has the very opposite effect of that clearly intended by the national bank act, *i. e.*, in giving the endorser of the note in question credit for the entire amount of his deposit while the other creditors must be satisfied with just what the assets of the bank will pay, whether it be ten, twenty or fifty per cent. To illustrate : A. has one thousand dollars to his credit on the books of the bank, B. has two thousand, C. has no deposit, but owes the bank a note of twenty-five hundred dollars on which B. is endorser ; the bank fails and is put in the hands of a receiver ; A. must be satisfied with what the dividends of the bank will pay on his one thousand dollars deposit, while B. on account of his endorsement for C. tenders five hundred dollars more, which with the credit of his deposit pays off the

note of C. and saves to himself the full amount of his deposit; C. then protects his paper by repayment to B., and the result is clear. Such a proposition is the one before us. It defeats the very object of the law and cannot be upheld by any rule of fairness and justice.

At the time of the failure of this bank the liability of the endorser on this note had not become fixed. His was a contingent liability. The endorser owed the bank nothing at the time it · went into the * hands of the receiver; the note was not due. The right of action against him first accrued to the receiver. He did not stand, at the time of the collapse of the bank, in the attitude of a debtor, owing an immature demand, but at the time, his liability was contingent. One cannot set off a demand due him from an insolvent bank against a liability that has become fixed since the appointment of a receiver. *Jordan v. Bank*, 74 N. Y. 467. The receiver succeeds to the rights of the bank existing at the time it goes into liquidation. *Bank v. Wall*, 56 Me. 167; *Miller v. Bank*, 1 Paige, 444; *Colt v. Brown*, 12 Gray, 233. The right of the set-off must be perfect and available at the time of the appointment of the receiver in order not to be affected by the bank's insolvency. *Hade v. McVay*, 31 Ohio St. 231. The same principle is enunciated by NELSON, J., in *Fry v. Evans*, 8 Wend. 530 ; also in *Meritt v. Seaman*, 6 N. Y. 168.

When a banking association, organized under the banking laws of congress, becomes insolvent and passes into the hands of a receiver under the provisions of that law, the respective rights and liabilities then existing between it and its creditors and debtors become fixed, and all its property and assets thereupon subject, after satisfying the prior claims, if any, of the government on account of its notes, to disposal and ratable distribution among all its general creditors upon the principle of equality. No subsequent lien can be created, or right of preference obtained in respect to any such assets or property after the appointment of a receiver. *Balch v. Wilson*, 25 Minn. 299.

The rights of the parties to this suit then must be decided with reference to the condition of things existing when Stephens was appointed receiver and took charge of the ·bank. The note not being then due the liability of the endorser was not fixed and the right of set-off did not exist, and not existing at the time of the appointment of the receiver it is quite clear that it does not spring into life afterwards. *Trust Co. v. Harris*, 2 Bosw. 76 ; *Clark v. Brockway*, 3 Keys, 13 ; *Middle District Bank*, 1 Paige, 585 ; *Clarke v. Hawkins*, 5 R. I. 219.

If this note had matured before the failure of the bank and had been paid, the proceeds would have passed into the hands of the receiver as cash assets, subject to be equally and ratably distributed among the general creditors of the association after settlement of the prior claims of the government according to the provisions of the national banking law. The money would have gone into the receiver's hands and this endorser would have come in for his deposit upon an equality with all the other creditors of the bank. The desire of the maker of this note to secure to his endorser the payment of his deposit in full may be a very laudable one ; it is one, however, which in view of the provisions of the national banking law cannot be consummated. The notes must be paid, and the endorser will receive his ratable share of the proceeds, but he can have no preference over other creditors. The unmistakable force and meaning of the banking act is to place all unsecured creditors upon the same footing of equality when the receiver was appointed. The endorser of the note in question was in the line of unsecured depositors to whom payment, the bank being insolvent, was prohibited ; he, at that time, had no right of set-off nor any equity against the note not then matured, which passed to the receiver. To allow the set-off now that the note has matured, and thereby make payment in full to the defendant endorser in discharge of his obligation to the bank, would, in our judgment, be contrary, not only to the policy of the law, but also to the plain meaning of its provisions. *Bank v. Taylor*, 56 Pa. St. 14; *Armstrong v. Scott*, 36 Fed. Rep. 63.

We have not been unmindful of the points so well raised in the brief of the respondents, nor have we neglected to carefully examine each and all of them, together with the authorities cited ; but we find nothing in them to justify us in departing from the provisions of the "national bank act," and the decisions of the various courts bearing thereon. On the admitted facts the judgment of the trial court is erroneous as a conclusion of law, and the same will be reversed and the cause remanded, to be disposed of as indicated herein. All concur.

