## YARDLEY *v.* CLOTHIER.[1]

### (*Circuit Court, E. D. Pennsylvania.* January 5, 1892.)

INSOLVENT BANK—RIGHTS OF DEPOSITORS—SET-OFF.
  A depositor in an insolvent bank, who had indorsed a note that was subsequently discounted by said bank, can, in a suit by the bank to recover the amount of the note, set off his deposit against this amount, when the note matured after the insolvency of the bank. Refusing to follow *Armstrong* v. *Scott,* 36 Fed. Rep. 63, and *Stephens* v. *Schuchmann,* 32 Mo. App. 333. *Bank* v. *Price,* 22 Fed. Rep. 697, distinguished.

At Law. Motion for judgment on case stated.

*Assumpsit* by Richard Yardley, receiver of the Keystone National Bank, against George W. Clothier, to recover the amount of a note indorsed by said defendant and discounted by said bank. Rule discharged.

*John R. Read* and *Silas W. Pettit,* for plaintiff.

*Geo. W. Harkins,* for defendant.

Before ACHESON, Circuit Judge, and BUTLER, District Judge.

BUTLER, District Judge. The facts, (presented in a case stated,) so far as material, are that the plaintiff is receiver of the Keystone National Bank; that, at the time of its insolvency, it was indebted to the defendant in the sum of $1,127.96; that, at the same time, it held three notes indorsed by him, not then due, aggregating in amount $390; that the notes were not paid by the maker, and were duly protested, of which notice was given; that the plaintiff sues on these notes, and the defendant sets up the indebtedness to him as a defense.

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

The doctrine of set-off is founded on the principles of equity, and, within certain limits, is universally recognized and applied. Where parties dealing together become mutually indebted, the balance appearing on their accounts is, generally, alone recoverable. Well-defined and easy of comprehension as the doctrine is, however, its application to the varying state of facts which arise, is attended with the same degree of difficulty that attends the administration of other plain legal principles, under unusual circumstances. In the distribution of insolvents' assets—whether under voluntary trusts for creditors, insolvent laws, in bankruptcy, or proceedings on decedents' estates—its application has frequently been resisted on the ground that its allowance would create preference among creditors. To enter upon an examination of the questions thus raised and the distinctions drawn would be unprofitable. It is sufficient to say that in every instance in which this objection has been made, (in the absence of controlling statutory provision,) where the proposed set-off *was* due when the creditors' rights attached, the courts have overruled it—whether the defendant's debt, in suit, was due at the time or matured subsequently. In *Skiles* v. *Huston*, 110 Pa. St. 254, [2 Atl. Rep. 30,] which was a suit by the administrator of an insolvent estate, on a note which matured after the insolvent's death, the defendant set up a debt due him in the insolvent's life-time; and the defense was resisted on the ground that its allowance would create preference. The court, in a well-considered opinion, sustained the defense. In *Van Wagoner* v. *Paterson Co.*, 23 N. J. Law, 283, the court of appeals applied the principle under precisely similar circumstances, except that the suit there was by the receiver of an insolvent state bank. The language of the court in that case is so pertinent and forcible as to be worthy of repetition. Said the chief justice:

"I am of opinion, both upon principle and authority, that the debtor of an insolvent corporation loses none of his rights by the act of insolvency; that he has the same equitable right of set-off against the receiver that he had against the corporation at the time of insolvency, and, consequently, that the debtor of a bank, whether his indebtedness has actually accrued or not at the time of insolvency, may in equity set off against his debt, either a deposit in the bank, or the bills of the bank *bona fide* received by him before the failure occurred. It is said the object of the act is to do equal justice to the creditors, and that equality is equity. But equality of what, and among whom? Clearly of the assets of the bank, among the creditors of the bank. In cases of cross-indebtedness the assets of the bank consist only of the balance of the accounts; that is, all the fund which the bank itself would have to satisfy its creditors, in case no receiver had been appointed. And there is no equality, and no equity, in putting a debtor of the bank, who has a just and legal set-off against the corporation, in a worse position, and the creditors in a better position, by the bank's failure and the appointment of a receiver."

*In re Receiver of District Bank*, 1 Paige, 585, and *Clarke* v. *Hawkins*, 5 R. I. 224, are to the same effect.

The suggestion that the rule in bankruptcy is referable to the language of the statute governing such cases is not, we think, well founded. This language is general, referring in terms to mutual debts and credits,

whether due or not. It cannot be doubted, we think, that the provision is simply a declaration of the previously existing rule, universally applicable to the settlement of insolvent estates; and that it would as certainly have been applied in bankruptcy proceedings without the provision as with. In *Van Wagoner* v. *Paterson Co.* the court well says:

"It seems to be assumed by the plaintiff's counsel that the equitable doctrine of set-off as applied in bankruptcy is founded on the express provisions of the statute; and it is true that all modern bankrupt laws contain a provision that in cases of mutual debts and credits the balance only shall be deemed the true debt; and the fact that all well-considered bankrupt laws do contain such a provision in favor of set-off, is of itself a strong authority in support of the natural equity and justice of the provision. It is equally true, however, that the jurisdiction of equity over set-off in cases of bankruptcy, and the practice of allowing them, was not derived from the statute, but was exercised by the courts long prior to the introduction of the provision into the statute."

The plaintiff contends, however—and this seems to be his chief reliance—that the language of sections 5234, 5236, and 5242, of the Revised Statutes, relating to national banks, forbids the application of the principle here. He invites our attention to the following quotations from, and summary of, these sections. The receiver shall "take possession of the books, records and assets of every description of said association, collect all debts, demands and claims belonging to them, and may if necessary, to pay the debts of such association, enforce the individual liability of stockholders." Section 5242 provides that "all transfers of notes, bonds or other evidences of debt," etc., "and payments of money to its shareholders or creditors, made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor over another  *   *   *   shall be void." These sections further provide, in effect, that the receiver shall pay over all money made to the treasurer of the United States, subject to the order of the comptroller of the currency, to whom he is directed to make report of his acts and proceedings. And the comptroller is directed, after making full provision for the redemption of the notes of the insolvent banking association, to make a ratable dividend on all claims against said association, which may be proved to his satisfaction. The foregoing quotations and summary are the plaintiff's. Except in the quotation from section 5242 we do not find anything relating directly to the subject of preferences. And this in terms only applies to transfers of assets after insolvency "with intent" to prefer. The language is not applicable to the facts before us. They show no transfer nor proposition to transfer assets with intent to create preference. There is, of course, no room to doubt that congress contemplated the equal distribution of assets, without preference, among creditors, just as the assets of all insolvent concerns and individuals, are distributed. If, therefore, allowance of the set-off proposed here would result in such preference, it is prohibited; not more especially, however, by the statute than by the general rule of law applicable to all similar

cases. But as we have already seen, it will not. The defendant will receive only what he is legally entitled to. His right of set-off was perfect before the creditors' rights attached. The latter stand on no higher plane than the bank occupied. Even an assignee for value would have taken the note subject to this defense. That the bank might have defeated it by indorsement, is immaterial. That results from considerations not involved here. If the note had matured when the insolvency occurred it would not be pretended that the set-off would confer a preference—that the defendant should pay his debt, as other debtors are required to do, and take a dividend on his credit, as other creditors must. And yet the circumstance that it was not due is obviously immaterial to the equities involved.

The plaintiff finds support, however, for his position that the statute forbids the set-off in *Armstrong* v. *Scott*, 36 Fed. Rep. 63, decided by the United States circuit court in Ohio. The question was there decided as he asks us to decide it. Ordinarily the circuit courts should, and do, follow each other's rulings; they do so always when they can, conscientiously; and we would cheerfully follow this case if our sense of duty permitted. That it does not is manifest from what we have already said. It is proper, however, that the case should receive further notice. The judge who delivered the opinion, bases his conclusion on the language of the statute, and the cases of *Hade* v. *McVay*, 31 Ohio St. 231, and *Bank* v. *Taylor*, 56 Pa. St. 14. Our views of the statute have been sufficiently stated. *Hade* v. *McVay*, is not, as we understand it, pertinent to the question. Hade, receiver of a national bank, brought suit on the defendant's note. The latter set up a claim for the penalty inflicted by the statute, for taking illegal interest,—the bank having incurred the penalty in discounting the note, in suit. The set-off was disallowed, solely, because the Civil Code of Ohio confines set-off to claims arising out of contract,—the court saying:

"A right of set-off perfect and available against the bank when the receiver was appointed is not affected by the bank's insolvency. The receiver succeeds only to the rights of the bank at the time it goes into liquidation."

The fact that the proposed set-off does not arise out of contract is then pointed out, and the court proceeds:

"A set-off can only be pleaded here in actions founded on contract, and must be of a cause of action arising upon contract."

*Bank* v. *Taylor* seems equally inapplicable. The set-off proposed was a claim acquired after the bank had become insolvent, and closed its doors. This was plainly forbidden, not more especially by the statute than by the general rule governing the administration of all insolvent estates. Its allowance would have worked an obvious preference.—The report of *Armstrong* v. *Scott*, says:

"The circuit judge concurs in the conclusions of the opinion, which is in accordance with his opinion in *Bung Co.* v. *Armstrong*, 34 Fed. Rep. 94."

Turning to this case we find it to be a proceeding in equity to obtain set-off, in which the facts are stated as follows:

"The Bung Company, as maker, paid Armstrong, receiver of the bank, a certain promissory note, and afterwards filed their bill in equity to secure the right of set-off to which bill the defendant demurred."

The syllabus is as follows:

"The voluntary payment by the maker of a promissory note with full knowledge of all the facts, operates as an abandonment and waiver of all right to set off cross-demands, or independent debts; and a bill disclosing such facts presents no case for equitable relief by way of set-off."

This case does not seem to bear any resemblance to *Armstrong* v. *Scott.*

The plaintiff also cites *Stephens* v. *Schuchmann*, 32 Mo. App. 333, as sustaining his view of the statute. This case adopts the ruling in *Armstrong* v. *Scott.* The court, however, refers to numerous authorities, not cited in the latter case. A careful examination has failed to satisfy us that they support the conclusion reached. They appear to be readily distinguishable from the case before the court. In *Bank* v. *Colby*, 21 Wall. 609, a creditor of the bank attached its assets after it became insolvent and closed its doors. That this was a violation of the statute is clear; but the facts bear no resemblance to those before the court. *Jordan* v. *Bank*, 74 N. Y. 467; *Balch* v. *Wilson*, 25 Minn. 299; *Trust Co.* v. *Hains*, 2 Bosw. 75,—decide simply that the debtor of an insolvent bank, or estate, whose obligation matures before the insolvency cannot set off a counter-claim maturing subsequently. These cases are analogous to *Bosler's Adm'rs* v. *Bank*, 4 Pa. St. 32; and rest on the same foundation—that the rights of other creditors attached and became fixed, before the right of set-off arose; that the defendant, having no such right at the time his obligation matured, could not acquire it by disregarding his duty to make prompt payment. As said in *Balch* v. *Wilson, supra:*

"If the defendant had paid his note when due, the money would have passed into the receiver's hands for the benefit of all the creditors; and the failure to pay as he ought, should not place him in a better position than he would have occupied if he had discharged his duty."

That these cases are inapplicable to the facts before the court in *Stephens* v. *Schuchmann*, and here,—where the defendant's right was perfect when the creditor's right attached, has, as we have already seen, been repeatedly decided. In *Jordan* v. *Sharlock*, 84 Pa. St. 366, and *Skiles* v. *Huston*, 110 Pa. St. 254, [2 Atl. Rep. 30,] the supreme court of Pennsylvania, by which *Bosler's Adm'rs* v. *Bank*, 4 Pa. St. 32, was decided, held that set-off is allowable in all cases, where the defendant's right is perfect when the insolvency occurs—reviewing the subject, generally, and pointing out the difference between such cases and that of *Bosler's Adm'r's* v. *Bank.* It may be remarked, in passing, that what is said in *Jordan* v. *Sharlock*, respecting the nature and effect of voluntary assignments in trust for creditors is immaterial to the question involved, as fully appears by the subsequent decision of the same court, in *Skiles* v. *Henderson.* The insolvent deed, in the former case, fixed the rights of creditors as effectually as did the insolvent's death in the latter. The two cases rest on the same foundation—that the right of set-off was perfect before the creditors' rights attached. *Bank* v. *Wall*, 56 Me. 167; *Colt*

v. *Brown*, 12 Gray, 233; *Clark* v. *Brockway*, *42 N. Y. 13,—decide no more than that a defendant cannot set off a claim acquired since the insolvency, against his debt which matured before.    *Merritt* v. *Seaman*, 6 N. Y. 168, and *Fry* v. *Evans*, 8 Wend. 530, decide simply, that a defendant cannot set off his claim against an insolvent, in suit against him for a debt contracted, not with the insolvent, but his legal representative.    This review of the cases cited in *Stephens* v. *Schuchmann*, seems to justify a belief that they do not support the decision in that case.

The plaintiff also appeals to *Bank* v. *Price*, 22 Fed. Rep. 697, and *Smith, Fleming & Co.'s Case—In re Commercial Bank*—L. R. 1 Ch. App. 538.    In the first of these cases the suit was by the receiver of a national bank to recover money paid a creditor after it had become insolvent.    The court held the payment to be a violation of the terms of the statute—a transfer of assets "with intent" to prefer, saying:

"One is presumed to intend the necessary consequences of his own acts, and after the directors vote to close the bank and go into liquidation, any transfer of assets to a creditor, whereby he secures a preference, must be presumed to be made with intent to prefer."

The case does not seem to shed any light on the question before us. *Smith, Fleming & Co.'s Case*, if applicable here, seems to be against the plaintiff, rather than for him.    The bank having failed, a liquidator was appointed, under the British statute governing such cases.    Among the assets were drafts accepted by Smith, Fleming & Co., not yet due. This firm, having a claim presently due, proceeded by bill to restrain the liquidator from negotiating the drafts,—and thus defeating their right of set-off.    The master of the rolls held that complainants had a valid right of set-off,—provided the drafts remained with the liquidator until maturity.    That it would be inequitable to allow him to negotiate them,—as the statute authorized, under certain circumstances,—and therefore restrained him.    On appeal, the court agreed with the master that the right of set-off existed, and might be exercised if the drafts remained with the liquidator, but held that, as they carried the right of negotiation, and the statute authorized its exercise, there was nothing in the circumstances to justify the restraint.    This case, as before stated, seems to be against the plaintiff.    Here the defendant's obligation remained with the receiver, and is the subject of his suit.

The question before us was considered by the circuit court, sitting in New Jersey, in *Balbach* v. *Frelinghuysen*, 15 Fed. Rep. 685, where it is said by Judge NIXON, (after considering other questions which arose:)

"I have much less difficulty with regard to the other questions raised by the pleadings and the evidence, to-wit: the right of the complainants to off-set the amount of their credit on the books of the bank at the time of the failure, against the two promissory notes for $15,000 each, which the bank had received from them for discount in the months of July and August preceding the failure [and not due at the date of insolvency.]    It is unquestionably true that if the Newark National Bank held these notes at the time of failure, and was entitled to receive the amounts due thereon, when they matured, such offset might be made."

It appeared, however, that the bank had indorsed and parted with the notes before maturity.

We do not consider it important that the defendant's obligation is that of an indorser simply. His undertaking was complete and his obligation absolute when he placed his name on the note. Nothing remained for him to do. His situation was similar to that of a drawer of a bill of exchange. The fact that he might be discharged by act of the maker, or failure to protest and give notice, is unimportant. The supreme court of Pennsylvania so decided under similar circumstances, in *Arnold* v. *Neiss*, 36 Leg. Int. 436. Whatever character, however, may be ascribed to the defendant's obligation the receiver took it such as it was, subject to the right of set-off which the defendant then had. Judgment must, therefore, be entered for the defendant, as provided for in the case stated.

ACHESON, Circuit Judge, concurs.