## William J. Hynes v. Illinois Trust & Savings Bank.

### Gen. No. 12,367.

1. BONDS—*when payment of, cannot be enforced against insolvent estate.* The holder of negotiable bonds who has acquired them for value before maturity, but with notice that his transferrer was liable to the estate of the maker in a sum greater than the amount of the dividend which could be paid by such estate, cannot recover upon the same from such estate.

Claim in chancery against receiver. Appeal from the Circuit Court of Cook County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed May 7, 1906.

**Statement by the Court.** In January, 1891, the Pacific Railway Company, an Illinois corporation, became insolvent. Charles F. Morse, a judgment creditor, filed a bill in behalf of himself and of all other creditors, under section 25 of the Incorporation Act, against the company and its stockholders to enforce the stockholders' liability in order to pay the debts of the company. It alleged, among other things, that C. B. Holmes was a stockholder, and as such was indebted to the company; and also that it was necessary to appoint a receiver to collect and to distribute the assets of the company and to enforce the liability of the stockholders. A receiver was appointed January 19, 1891, and has ever since been engaged in the duties of that office.

December 4, 1891, the law firm of Hynes & Dunne, of which appellant was the senior member, filed the answer of Holmes to said bill. It is alleged therein that at the time the bill was filed Holmes held and owned 527 shares of the capital stock of the company fully paid up and that he was also its creditor to the amount of $200,000.

After issue joined the cause was referred to a master to take proof of the number of shares held by each stockholder, and upon what consideration; and also as to what sums of money were due from the company to the complainant and to other creditors. Holmes did not see fit to prove up his claim upon his bonds under this reference.

The master having reported his findings of fact and of law, the chancellor, July 1, 1898, entered a decree holding that the stockholders (among whom was Holmes) were liable to the amount of $68 per share upon each share of stock held by them respectively at the date of the filing of said bill.

It further appearing to the court that, as to certain shares of stock (among which were the shares held by Holmes), questions remained to be settled, such as whether the assignor or the assignee of such stock was, or both were, liable to pay said $68 per share, the cause, as to such shares, was again referred to the master.

Upon the coming in of this report a decree was entered January 8, 1900, against Holmes, fixing his liability as a stockholder of said company upon 465 shares, at the par value of $100 each, in the sum of $31,620, with interest at legal rates from August 1, 1898. An execution was forthwith issued upon this decretal judgment, and was thereafter returned wholly unsatisfied.

In October, 1894, Holmes, being indebted to appellant in the sum of $20,000, part for moneys loaned and part for services in this cause, assigned and transferred to appellant thirty bonds issued by said company, each for the sum of $1,000, dated August 24, 1889, and payable January 1, 1920, with interest at six per cent. per annum. July 19, 1898, appellant filed his claim in this cause upon said thirty bonds, and made proof before the master. July 8, 1904, the master filed his report upon said claim, finding for appellant. Upon exceptions filed a hearing was had thereon before the chancellor, who sustained the exceptions to the master's report and dismissed the claim. In the decree then entered the chancellor found the facts as hereinbefore stated, and also found that appellant knew when he purchased said bonds that he was defending Holmes in this cause against liability as a stockholder in said company; and knowing that Holmes had not paid for such stock and was liable thereon at the time of his purchase, appellant stood in no better position than Holmes would stand did

he still retain and own said thirty bonds; and that therefore the decree rendered against Holmes upon his stock liability should be set off against the claim made by appellant upon said bonds. The court also found that all of the assets of the company had been collected, and that they were sufficient to pay 44½ per cent. only of the indebtedness of the company. And the court further finding that the amount of the said decretal judgment against Holmes largely exceeded the amount due on said thirty bonds, decreed that there was nothing due to appellant from said estate. This appeal followed.

WILLIAM J. HYNES and EDWARD C. HIGGINS, for appellant.

EDWIN WALKER and JOHN BARTON PAYNE, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

The rights and liabilities of Holmes are to be determined as of the time of the filing of the bill and the appointment of the receiver. At that date Holmes was a creditor of the company. Appellant was not then its creditor.

If Holmes had retained the ownership of these thirty bonds and had proved them as a claim against the company, the court would have compelled him to pay the amount of the decretal judgment against him before it would have allowed him to participate in the distribution of the assets of the insolvent company. Had the claim upon the bonds been proved by Holmes before his stock liability was determined, the court would have withheld payment upon the one until the other had been passed upon.

The receiver was appointed to enable the court to collect in all the assets of the insolvent company for the benefit of its creditors. The moment the insolvency of the company was ascertained its assets became trust funds for the payment of its creditors; and the court would proceed in administering the estate upon the maxim that equality is equity. Blair v. Illinois Steel Co., 159 Ill. 361; Roseboom

v. Whittaker, 132 Ill. 81; Colt v. Brown, 78 Mass. 233; Balch v. Wilson, 25 Minn. 299; King v. Armstrong, 50 Ohio St. 222; Scott v. Armstrong, 146 U. S. 499.

But it is said that because these bonds were negotiable and not due, and appellant purchased them for value, they are excepted out of the general rule, and that therefore the claim of appellant should be paid without reference to the stockholders' liability to which it was subject while in the hands of Holmes, and without reference to the established insolvency of Holmes. We do not so understand the law.

Appellant, for more than three years before he purchased these bonds, had represented Holmes in this cause, had filed his answer to the bill herein, and had performed these and other services to the value of $5,000 in endeavoring to shield Holmes from liability as a stockholder in this insolvent company. Therefore appellant must be held to have known all that has been pleaded, proved or decided in this cause, and to have taken these bonds *cum onere*. The learned chancellor who decided this case stated the law governing it so clearly that we quote and adopt it:

" By a long established rule both in bankruptcy and in the administration by chancery of insolvent estates either of deceased persons, or, by statute, of insolvent corporations, or by courts with equitable powers, under voluntary assignments for the benefit of creditors, all claims, whether on negotiable or non-negotiable instruments, are proven as of the date at the latest that the court acquires jurisdiction of the fund—in this case at the latest, the date of the appointment of the receiver. No claim then existing can be in any manner thereafter enlarged. No right of set-off, legal or equitable—and in the administration of insolvent estates courts of chancery adopt very broad rules in permitting set-offs for the promotion of justice as against insolvents, even though they could not be pleaded in a suit at law—can be destroyed by any subsequent transfers.

Some courts are so insistent on the date of the appointment of the receiver in determining the amount of the claim, that, contrary to the bankruptcy rule, they do not

even compel creditors to file their security, or contrary to the Illinois law (Levy v. The Chicago National Bank, 158 Ill. 88) to deduct collections made on the securities after the appointment of the receiver and before filing the claim. (Merrill v. Bank, 173 U. S. 131.)

That the negotiability of the obligations of the company should not change the rule so as to enable claims to which defenses exist in the hands of the holders at the time of the appointment of a receiver to share in the fund which equity has taken in hand for the purpose of distributing it equally and equitably among the creditors of the insolvent corporation, would seem to be clear, and doubtless for this reason the authorities are few on the exact point. *Ex parte* Deey, 2 Cox, 423, and *Ex parte* Rogers, Buck 490, early English bankruptcy cases, are, however, expressly in point, to the effect that a *bona fide* purchaser without notice before maturity of a negotiable instrument, who has bought after bankruptcy, is subject to all defenses that could have been made against the holder at the time of the bankruptcy."

Appellant insists that the court erred in not finding a balance due him, after allowing the set-off, or in not sending the claim back to the master to ascertain the balance due appellant after allowing the set-off.

The court found that all the collectible assets had been converted into cash, and that they would pay but $44\frac{1}{2}$ per cent. of the amount of the proved claims. As the amount due upon the Holmes stock liability is several thousand dollars greater than is the amount payable out of the estate upon these thirty bonds, nothing could be accomplished by ascertaining such alleged balance, which in fact did not exist. A court will not knowingly order the doing of an unnecessary thing.

The judgment of the Circuit Court is affirmed.

*Affirmed.*