## WILLIAMS v. ROSE.

(District Court, D. New Jersey. October 21, 1914.)

1 BANKS AND BANKING (§ 135*)—NATIONAL BANKS—INSOLVENCY—SET-OFF
—INDEBTEDNESS.

Where a depositor in an insolvent national bank had indorsed a note, on which he was in fact primarily liable, and procured the bank to discount it for his benefit, he was entitled, in a suit by the bank's receiver to recover the amount of the note, to set off his deposit in the bank against his liability on the note.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 375–379; Dec. Dig. § 135.*]

2. BANKS AND BANKING (§ 49*)—NATIONAL BANKS—STOCKHOLDER'S LIABILITY—SET-OFF.

A stockholder of a national bank was not entitled to set off against his double stock liability the amount of his unpaid deposit account in the bank at the time of its failure; such stock liability, imposed by Rev. St. §§ 5226, 5227 (Comp. St. 1913, §§ 9813, 9814), being for the express purpose of making good the contracts, debts, and engagements of the bank, and being a trust fund in which all creditors were entitled to share pro rata.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 71–81½, 513, 534, 535; Dec. Dig. § 49.*]

At Law. Action by Christopher L. Williams, as receiver of the First National Bank of Bayonne, N. J., against Julius A. Rose. On motion to strike out defendant's answer. Denied without prejudice.

The First National Bank of Bayonne became insolvent upon December 8, 1913, and in due course plaintiff became receiver. The complaint alleges that about October 20, 1913, Joseph Hochstein made and delivered his promissory note, dated at Bayonne, N. J., October 20, 1913, and promising to pay to the order of himself $1,225 at the First National Bank of Bayonne. The note was due December 20, 1913. The indorsement was made by Joseph Hochstein, Julius A. Rose, and two others. Before maturity the defendant Rose duly indorsed and delivered the note to the First National Bank of Bayonne for value. The note was duly presented at maturity, payment was refused, protest followed, and no part of the note has been paid.

The second count alleges that on November 9, 1913, George W. Evans made his note, due one month after date, to the order of Minnie Rose, promising to pay $650 at the First National Bank of Bayonne. This note was indorsed by Minnie Rose and Julius A. Rose, and before maturity it was indorsed and delivered to the First National Bank of Bayonne for value. Thereafter payment was demanded, but not made.

The third count alleges that the First National Bank of Bayonne was organized as a national bank on December 5, 1906, with a capital stock of $100,000, consisting of 1,000 shares of stock, of the par value of $100 each. The bank did business until December 6, 1913, when it became insolvent, and plaintiff was appointed, in due course, receiver. It is alleged that prior to December 6, 1913, the defendant Rose purchased 2 shares of the capital stock of the bank and the certificates for the said 2 shares were duly issued and delivered to the defendant prior to December 6th; that they were registered in the name of the defendant on the books of the bank prior to said date; and that he was the owner and holder of the said 2 shares at the time of filing the suit, to wit, September 2, 1914. It is alleged that on May 13, 1914, the Comptroller of the Currency, having concluded that it was necessary, in order to pay the debts of the bank, to enforce the individual liability of the stockholders to the extent of 100 per cent., as prescribed by sections 5151 and 5234 (Comp. St. 1913, § 9821) of the Revised Statutes of the United States, made

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an assessment upon the shareholders for $100,000, to be paid by each ratably on or before June 13, 1914, and demanded $100 upon each and every share of the capital stock held or owned by the shareholders, respectively, at the time of the failure of the bank, to wit, December 6, 1913. Demand was thereafter made of the defendant to pay $100 per share on each of the 2 shares standing in his name on the books of the bank, but he failed to make the payments.

Judgment is demanded for $2,078.14, with interest on the $1,225 note from December 20, 1913, and with interest on the $650 note from December 9, 1913, and with interest on $200 for the shares of stock.

The answer of the defendant Rose sets up that he applied to the bank for a $1,500 loan, and was told that if he would present a note for that amount the bank would discount the same and apply the proceeds to the credit of the account of the defendant; that thereupon defendant induced Joseph Hochstein to make a note for $1,500 as an accommodation to the defendant, which note defendant also induced two others to indorse as accommodation indorsers, and presented the same to the bank for discount; that the bank discounted the note, well knowing that Hochstein and others had merely signed for the accommodation of the defendant, and that defendant was primarily liable, and the note and the proceeds were to be used by him for his own benefit; that no consideration was received by Hochstein and others for becoming parties to the note, and that they were merely accommodating the defendant and aiding him in procuring the loan; that renewals were had until the note was reduced to $1,225, when defendant delivered to the bank the note mentioned in the first count of the complaint; that on December 8, 1913, when a receiver for the bank was appointed, the defendant Rose had on deposit with the bank $1,964, and that upon the maturity on the $1,225 note he requested that the note be charged against the credit of $1,964 by reason of his account, but the receiver refused to do this; and that the defendant, being primarily liable on the note, was entitled to have the note set off and paid out of the money on deposit to his credit in the bank.

For answer to the second count, the defendant sets up that, being in need of money, he induced one George W. Evans to make a note for $1,500 as an accommodation for the defendant, which said note was made payable to the order of Minnie Rose, the wife of the defendant, and that thereafter the bank discounted the note, knowing that the defendant was primarily liable, and that the proceeds arising from the note were to be used by the defendant for his own proper use and benefit; that Evans received no consideration for becoming a party to the note, and that the note was reduced from time to time; and that when the bank failed on December 8, 1913, it owed the defendant $1,964, but that the bank refused, upon the maturity of the note of $650, to charge the note against the credit of $1,964.

For answer to the third count, defendant sets up that when the bank failed he had an account of $1,964 on deposit in said bank; that he demanded of the plaintiff that it apply against the credit of $1,964 in favor of the defendant the $200 due from him, mentioned in the third count of the complaint, and offered to pay the defendant the difference between the amount on deposit with the bank to the credit of the defendant and the amounts due from him (the defendant) to the bank on the demands referred to in the first, second, and third counts, but that the bank refused to accept. He asks judgment in his favor on the third count for costs, and that the money on deposit in the bank to the credit of the defendant be set off against the amount claimed by the plaintiff in the first, second, and third counts.

Motion is made by the receiver to strike out the answer of the defendant, on the ground that answer was not filed within 20 days after service of summons, inclusive, and for judgment for the plaintiff.

George M. Burditt, of New York City, for plaintiff.
H. B. Dembe, of Bayonne, N. J., for defendant.

HUNT, Circuit Judge (after stating the facts as above). The first question presented by the motion is whether the defendant, who al-

leges that he is primarily liable upon the notes, although an indorser, may offset the notes against his deposit account with the bank, which has failed; and the second is whether a stockholder, who has not paid the assessment upon his national bank stock, may offset his deposit in the bank, which has failed, against the assessment demanded under the provisions of the National Banking Act.

[1] 1. The first question seems to have been considered very often, and a number of well-reasoned decisions have been made, wherein it has been held that an indorser cannot offset his deposit balance against his notes. This view is often based upon the ground that if he could, where the maker is a solvent person, to allow him to do so would extend to the indorsers of the paper an unwarranted preference. The Comptroller of the Currency has ruled to this effect, saying that, if the maker of a note is solvent and can be compelled to pay it, the indorser should not be permitted to take up the note by canceling the indebtedness of the bank to himself, for he might thereby be enabled indirectly to obtain a preference over other creditors. The current of the decisions of later date seems to be that no preference shall be given to one over another depositor, and therefore that, where the maker is solvent, it is unjust to allow the indorser the set-off of a deposit.

In Davis v. Industrial Manufacturing Co., 114 N. C. 321, 19 S. E. 371, 23 L. R. A. 322, this general rule was recognized, and in Knaffle v. Knoxville Banking & Trust Co., 128 Tenn. 181, 159 S. W. 838, 50 L. R. A. (N. S.) 167, the Supreme Court of Tennessee said that, if the relief there prayed for by the petitioning surety were granted, an inequitable result would be worked against the rule which ordinarily denied set-off where a depositor was in fact a mere surety on the note and it appeared that the principal obligor was solvent. Edmondson v. Thomasson, 112 Va. 326, 71 S. E. 536, Ann. Cas. 1913A, 1301, was decided in accordance with a like rule. So, also, were the cases of New Farmers' Bank's Trustee v. Young, 100 Ky. 683, 39 S. W. 46, and Stephens v. Schuchmann, 32 Mo. App. 333. The Missouri case just referred to was an action by a receiver of an insolvent national bank against an indorser on promissory notes, wherein the indorser sought to set off his deposit in the bank. Section 5242 of the Revised Statutes of the United States (Comp. St. 1913, § 9834) received careful examination by the court, which in interpreting the intent of the statute held that it did not give the indorser of the note credit for the entire amount of his deposit while other creditors had to be satisfied with just what the assets of the bank might be.

In Re Middle District Bank, 1 Paige (N. Y.) 585, Chancellor Walworth said:

"If the real debtor is unable to pay, and the receiver is compelled to resort to the indorser, who is eventually to be the loser, he has the same equitable claim to offset bills which he had at the time the bank stopped payment. But no such offset should be allowed to an indorser where he is indemnified by the real debtor, or where the latter can be compelled to pay."

A recent decision in New York, cited by the plaintiff, Borough Bank of Brooklyn v. Mulqueen et al., 70 Misc. Rep. 137, 125 N. Y. Supp. 1034, is to a like effect.

But, however sound these decisions may seem to me, I find it impossible to distinguish the present case from the rule of Yardley v. Clothier, 51 Fed. 506, 2 C. C. A. 349, 17 L. R. A. 462, where Judge Wales, speaking for the Circuit Court of Appeals for this circuit, affirms the conclusions reached by Judges Acheson and Butler in Yardley v. Clothier (C. C.) 49 Fed. 337. The Court of Appeals quotes the provisions of section 5242 of the Revised Statutes of the United States, and refers to the frequent objection interposed in the distribution of insolvents' assets upon the ground that the allowance of set-off creates preferences among creditors, yet reaches the conclusion that the controlling weight of authority has established the doctrine that, in the absence of express statutory prohibition, set-off of a debt owing to the defendant will be allowed if it was due when the creditors' rights attached, whether the debt sued on was due at the same time or matured subsequently. Many cases are examined by the court, including Re Middle District Bank, 1 Paige (N. Y.) 584, Armstrong v. Scott (C. C.) 36 Fed. 63, and others.

Counsel for the plaintiff refers to the decision of Yardley v. Clothier, admitting that it is in point, in that the indorser of a note was there allowed the offset of his deposit, but would have the court distinguish it from the present case, for the reason that the point that, if the maker is solvent, the indorser cannot set off his deposit was not presented. Possibly the Court of Appeals would recognize the distinction urged, but I gather that the court considered the point that the defendant's obligation in the case before it was that of an indorser simply, for such a position had been referred to by the Circuit Court and, moreover, the action was one by a receiver against a defendant as an indorser. The Court of Appeals applied the rule that mutual accounts are to be adjusted in such manner that the balance constitutes the debt to be recovered. Furthermore, it is significant that the rule of set-off as declared in Yardley v. Clothier by the Circuit Court was expressly approved by the Supreme Court of the United States in Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059.

[2] 2. Upon the second question, in the absence of a controlling decision by a higher court, my view is that a stockholder is not entitled to set off against an assessment made against him pursuant to the Revised Statutes of the United States, where a bank has become insolvent, the amount of his individual claim against the bank. The reasoning of the Circuit Court of Appeals of the Ninth Circuit in Wingate v. Orchard, 75 Fed. 241, 21 C. C. A. 315, covers this branch of the present case. The court there put its decision upon the ground that the fund provided for under the Revised Statutes was not intended for any particular creditor, but to make good all debts equally and without any preference, and that in the event of the winding up of the affairs of a national bank the fund provided by sections 5226 and 5227 was for the express purpose of making good the contracts, debts, and engagements, and is manifestly a trust fund, to a pro rata share of which all creditors are equally and equitably entitled. The court distinguished the case of Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059, and cited in support of the conclusion reached De-

lano v. Butler, 118 U. S. 634, 7 Sup. Ct. 39, 30 L. Ed. 260. In the latter case the Supreme Court of the United States treated an assessment under section 5151 as made by authority of the Comptroller of the Currency, not as a voluntary one, and as only to be applied to the satisfaction of the creditors, equally and ratably. Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968.

The present motion to strike out the whole answer is denied, without prejudice, however, to the interposition of another motion by the plaintiff, based upon the view expressed upon the second point discussed in this memorandum opinion.