## WINGATE v. ORCHARD.

(Circuit Court of Appeals, Ninth Circuit. June 1, 1896.)

### No. 266.

NATIONAL BANKS—INSOLVENCY—ASSESSMENT AGAINST SHAREHOLDERS—SET-OFF.
A holder of stock in a national bank is not entitled to offset against an assessment ordered by the comptroller upon his stock the amount of his deposits at the time the bank became insolvent.

In Error to the District Court of the United States for the Western Division of the District of Washington.

This was an action at law by Robert Wingate, as receiver of an insolvent national bank, against George F. Orchard, a stockholder therein, to recover the amount of an assessment ordered by the comptroller of the currency upon the defendant's stock. By the judgment below, defendant was allowed to set off against this assessment the amount of his deposits in the bank at the time it became insolvent, and the plaintiff brought error.

Doolittle & Fogg, for plaintiff in error.
John P. Hartman, Jr., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The sole question presented and argued by counsel in this case is whether or not a holder of stock of an insolvent national bank is entitled to offset against an assessment upon his stock, ordered by the comptroller of the currency, the amount of his deposits in the bank at the time it became insolvent. The court below held that the stockholder is entitled to offset against such assessment the amount of such individual claim against the bank, and to review that ruling the present writ of error was brought. We are of opinion that the ruling was erroneous. The statute of the United States providing for the asso-

ciation of persons for carrying on the business of banking provides, among other things, that:

"At least fifty per centum of the capital stock of every association shall be paid in before it shall be authorized to commence business; and the remainder of the capital stock of such association shall be paid in installments of at least ten per centum each on the whole amount of the capital, as frequently as one installment at the end of each succeeding month from the time it shall be authorized by the comptroller of the currency to commence business; and the payment of each installment shall be certified to the comptroller, under oath, by the president or cashier of the association." Rev. St. § 5140.

When the last of such installments is paid, the stock is fully paid for, and the capital of the bank equals at least the face value of its stock. But the statute providing for such banking institutions proceeds to impose upon those who shall subscribe for their stock an additional liability. It does so in these words:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares" (with certain exceptions not applicable to the present case). Rev. St. § 5151.

It was to enforce this additional liability that the comptroller of the currency directed the assessment, to enforce which the present suit was brought in the court below. The evident object of the statute is to provide a fund equaling in amount, but in addition to, the face value of the stock, to make good all contracts, debts, and engagements into which such association may enter, and, to that extent, it makes every shareholder individually responsible, equally and ratably, and not one for another. The fund thus provided for is not intended for any particular creditor, but to make good all contracts, debts, and engagements of such association, equally and without any preference. But unlike the voluntary obligation of the shareholder to pay for the stock for which he subscribes, and with which funds the business of the bank is to be conducted, the additional or double liability imposed by section 5151 of the Revised Statutes is to be called for only for the purpose of making good the contracts, debts, and engagements of the bank. If necessary for that purpose, that liability is to be enforced pursuant to the provisions of section 5234 of the Revised Statutes; that is to say, through a receiver acting under the direction of the comptroller of the currency,—such receiver having been appointed by the comptroller pursuant to the provisions of that section, and of sections 5226 and 5227 of the Revised Statutes. The fund thus provided for, in the event of the liquidation and winding up of the affairs of the bank, equal in amount to the face value of the stock, and imposed for the express purpose of making good the contracts, debts, and engagements of the association, is manifestly a trust fund, to a pro rata share of which all creditors are equally and equitably entitled. Obviously, to permit a holder of stock in such a bank to offset against an assessment for the additional liability thus imposed upon him as such holder the amount of his deposits in the bank, in respect to which he is no more entitled than any other creditor,

would be, in effect, to make him a preferred creditor. If the amount of his deposits should equal the par value of his stock, the allowance of such an offset would be, in effect, to pay him in full the amount of his deposits; and, if his deposits are less than the par value of his stock, the effect would be to pay him in full, to that extent, whereas the other depositors may receive little or nothing. Such was not the intention of congress in imposing, as it did, by section 5151 of the Revised Statutes, upon the shareholders of every national banking association, in addition to the amount invested in such shares, a liability for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof. On the contrary, the purpose was, as has been said, to provide a fund to which all creditors should be entitled to look upon equal terms, and in which, in the event of disaster, all creditors, without preference to any, should be entitled to share pro rata. There is nothing in the case of Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, relied upon by counsel for the defendant in error, and which they say was the basis of the ruling of the court below, opposed to the views here expressed. In that case no question arose in respect to any holder of stock in a national bank. There the Fidelity National Bank of Cincinnati had loaned the Farmers' & Merchants' Bank $10,000, at a discount at the rate of 7 per cent. per annum for 90 days, under an agreement that the money so borrowed, less the discount, should be placed to the credit of the Farmers' Bank on the books of the Fidelity Bank. The promissory note there in suit was executed accordingly, dated and discounted on June 6, 1887, and the proceeds, $9,819.17, were placed to the credit of the Farmers' Bank, upon the books of the Fidelity Bank, to meet any checks or drafts of the Farmers' Bank, and to pay the note when it became due. Afterwards, and before June 20th, the Farmers' Bank drew against the deposit the sum of $1,009.23; and the balance, $8,809.94, remained to the credit of the defendant to meet the note, and was so to its credit at the time the receiver was appointed. Upon the maturity of the note, and before suit was brought, defendant tendered the receiver the sum of $1,190.06, the balance due on the note, and kept the tender good. The court held that the credits between the banks were reciprocal, and parts of the same transaction, in which each gave credit to the other on the faith of the simultaneous credit, and that the principle applicable to mutual credits applied.

"It was, therefore," said the court, "the balance upon an adjustment of the accounts, which was the debt, and the Farmers' Bank had the right, as against the receiver of the Fidelity Bank, although the note matured after the suspension of that bank, to set off the balance due upon its deposit account, unless the provisions of the national banking law were to the contrary."

And the court proceeded to show that the provisions of sections 5234, 5236, and 5242 of the Revised Statutes, which were relied upon by counsel as forbidding the set-off, did not do so.

"Undoubtedly," said the court, "any disposition by a national bank, being insolvent or in contemplation of insolvency, of its choses in action, securities, or other assets, made to prevent their application to the payment

of its circulating notes, or to prefer one creditor to another, is forbidden; but liens, equities, or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency, and not in contemplation thereof, are not invalidated. The provisions of the act are not directed against all liens, securities, pledges, or equities, whereby one creditor may obtain a greater payment than another, but against those given or arising after, or in contemplation of, insolvency. Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference; and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."

All of this, while controlling as authority, and perfectly sound in principle, has not, in our opinion, any application to the facts of the present case. But the views we have expressed do find support in a decision of the supreme court, reported in 118 U. S. 634–653, 7 Sup. Ct. 39. It is the case of Delano v. Butler, where the court distinguished the assessment imposed upon the stockholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege of continuing business, and to avoid liquidation under section 5205 of the Revised Statutes, and the assessment provided for by section 5151, saying:

"The assessment, as made under section 5205, is voluntary,—made by the stockholders themselves, paid into the general funds of the bank as a further investment in the capital stock, and disposed of by its officers in the ordinary course of its business. It may or may not be applied by them to the payment of creditors, and, in the ordinary course of business, certainly would not be applied, as in cases of liquidation, to the payment of creditors ratably; whereas, under section 5151, the individual liability does not arise, except in case of liquidation, and for the purpose of winding up the affairs of the bank. The assessment under that section is made by authority of the comptroller of the currency, is not voluntary, and can be applied only to the satisfaction of the creditors, equally and ratably. If the claim in the present case were allowed, it would follow that, in every case, payments made by stockholders for the purpose of restoring the impaired capital would be considered as credits on the ultimate individual responsibility of shareholders, and the whole efficiency of the provisions of section 5151 for the protection of the creditors of the company at the time of liquidation would be destroyed. The obligations of the shareholders under the two sections are entirely diverse, and payments made under section 5205 cannot be applied to the satisfaction of the individual responsibility secured by section 5151."

For similar reasons, neither can the individual claim of the stockholder against the bank for moneys deposited by him therein be offset against his responsibility to all of the creditors secured by section 5151. See, also, Hobart v. Gould, 8 Fed. 57, and cases there cited. The judgment of the court below, of May 22, 1895, allowing the set-off in question, is accordingly reversed.