REICHERT v. FARMERS' & WORKINGMEN'S SAVINGS BANK.

1. BANKS AND BANKING—SAVINGS INVESTMENTS HELD SOLELY FOR
   BENEFIT OF SAVINGS DEPOSITORS.
      Under 3 Comp. Laws 1929, § 11928, investments of savings de-
         partment of insolvent State bank must be held solely for
         benefit of savings depositors until their claims are paid in
         full.

2. SAME—PAYMENT OF LIQUIDATION DIVIDENDS TO OTHER THAN
   SAVINGS DEPOSITORS.
      Where portion of investments of savings department of bank are
         so involved in litigation that it will be impossible to ascertain
         what amount will be ultimately available from savings in-
         vestments, receiver is justified in paying liquidation dividends
         to other than savings depositors, provided he retain sufficient
         assets to insure payment of percentage of savings depositors'
         claims equal to that paid on claims of commercial depositors.

3. SAME.
      Under 3 Comp. Laws 1929, § 11962, receiver of insolvent State
         bank is justified in paying dividends to other than savings
         depositors before it has been finally determined what assets
         are available, provided he retain sufficient assets to insure
         payment to savings depositors of full amount due them from
         savings assets and also to pay them ratably with commercial
         depositors.

4. SAME—WHEN SAVINGS DEPOSITORS ENTITLED TO SHARE IN GEN-
   ERAL ASSETS.
      If there be insufficient proceeds from liquidation of investments
         of savings department to pay savings depositors in full, they
         are entitled to share in balance of assets ratably with com-
         mercial depositors after latter have been paid equal percentage
         with former. Per SHARPE, NORTH, FEAD, and BUTZEL, JJ.

5. SAME—BANK LOANS SECURED BY SECURITIES BELONGING TO SAV-
   INGS DEPARTMENT MUST BE PAID FROM GENERAL ASSETS.
      Where loans are made by bank and securities which belong to
         savings department are pledged as collateral security for re-
         payment of such loans, they must be paid from general assets
         of bank and pledged securities held solely for benefit of
         savings depositors, unless savings department has been other-
         wise reimbursed.

   As to depositor's right of set-off when bank becomes bankrupt,
see annotation in 55 L. R. A. 48, 52, 62, 70.

6. SAME—SAVINGS DEPOSIT MAY BE SET OFF AGAINST COMMERCIAL OBLIGATION.

> Under 3 Comp. Laws 1929, § 11928, providing for keeping of investments relating to savings departments entirely separate and apart, bank receiver is justified in permitting set-off of savings deposit against commercial obligation.

7. SAME—EXPENSES OF RECEIVERSHIP ORDINARILY PAID FROM GENERAL ASSETS.

> Expenses of administration of bank receivership are first charge against assets in hands of receiver, and ordinarily should be paid from general assets; but whole or any just proportion of expenses incident to special services in conserving or liquidating savings assets may be made charge against such assets.

8. SAME—DIVIDENDS MAY BE PAID OUT OF PROCEEDS OF STOCK ASSESSMENTS BEFORE FINAL LIQUIDATION.

> Proceeds of stock assessments under statutory double liability may be paid out by receiver by way of liquidation dividends before it is actually determined that there will be insufficient assets with which to meet obligations of bank, and if any portion of assessment is not required to pay creditors or expenses of administration it should be returned to assessed stockholders.

9. SAME—GENERAL ASSETS TO BE DISTRIBUTED RATABLY.

> General assets of bank which do not relate specifically to either savings investments or commercial investments should be distributed ratably to all creditors after commercial creditors and savings creditors have been paid equal percentage of their claims. Per SHARPE, NORTH, FEAD, and BUTZEL, JJ.

10. SAME—WHEN SAVINGS DEPOSITORS ENTITLED TO SHARE IN BALANCE OF ASSETS—BASIS OF DISTRIBUTION.

> Savings depositors are entitled to share in balance of assets after savings department assets are exhausted only after commercial depositors have been paid equal percentage of their claims, and then on basis of claims filed and proved. Per SHARPE, NORTH, FEAD, and BUTZEL, JJ.

11. SAME—DEPOSIT MAY BE SET OFF WHERE DEPOSITOR'S DEBT SECURED BY COLLATERAL.

> Deposit in bank may be set off although depositor's debt to bank is secured by collateral.

12. SAME—DEPOSIT MAY NOT BE SET OFF AGAINST STATUTORY LIA-
    BILITY OF STOCKHOLDER.

 Deposit in bank, in case it becomes insolvent, may not be set
  off against stockholder's statutory liability. POTTER, J., dis-
  senting.

Certified Questions from Jackson; Simpson
(John), J. Submitted January 5, 1932. (Calendar
No. 36,275.) Decided April 4, 1932.

In receivership proceedings brought by Rudolph E.
Reichert, State banking commissioner, against
Farmers' & Workingmen's Savings Bank, questions
relative to ratable dividends, set-offs, and savings
investments were certified to this court.

*Paul W. Voorhies,* Attorney General, and *Paul G.
Eger,* Assistant Attorney General, for plaintiff.

*Bisbee, McKone, Wilson & King,* for receiver
Jackson City Bank & Trust Company.

*Arthur E. Moore* and *Robert C. Baldwin,* for in-
tervener Harry W. Gross, receiver of Hazel Park
State Bank.

*Fletcher L. Renton,* for intervener Harry W.
Gross, receiver of State Savings Bank of Royal Oak.

*Earl L. Phillips,* for intervener Howard C. Knick-
erbocker, receiver of Farmington State Savings
Bank and Farmers' State Savings Bank of Milford.

*Beaumont, Smith & Harris, Nathaniel H. Gold-
stick,* and *Paul J. Wieselberg,* for J. Walter Drake
and another, receivers of Fidelity Bank & Trust
Company.

*Parmenter & Van Eenenaam,* for Leon F. Titus,
receiver of Peoples State Bank for Savings, and
Bankers Trust Company of Muskegon, receiver of
Farmers & Merchants State Bank.

*John G. Dunn, Waldo C. Granse,* and *Frank P. Darin, amici curiæ.*

CLARK, C. J.  Certified questions from the Jackson circuit court arising upon petition of receiver of defendant bank for directions to govern administration of his trust.

*First question:*  "Under section 11928, 3 Comp. Laws 1929, must the investments of the savings department of a State bank be held solely for the benefit of savings depositors?"

*Answer:*  Yes.

The statute cited is in part:

"Any bank combining the business of a commercial bank and a savings bank, and operating an industrial loan department shall keep separate books of account for each kind of business: *Provided,* That all receipts, investments and transactions relating to each of said classes of business shall be governed by the provisions and restrictions herein specifically provided for the respective kinds of banks: *Provided further,* That all the investments relating to the savings department shall be kept entirely separate and apart from the other business of the bank, and that the reserve required by the provisions of this act to be kept on the savings deposits, shall be kept separate and distinct on the books of the bank from the reserve required on the commercial deposits, and that such portion of said savings deposits as are on hand unloaned or deposited with other banks or reserve agents and the investments made with the funds deposited by savings depositors shall be held solely for the payment of depositors of said funds."

This statute is so perfectly clear and unambiguous that no comment on its meaning is necessary.

Conflict is urged in respect of 3 Comp. Laws 1929, § 11962, quoting in part:

"From time to time, under the direction of the commissioner of the banking department, the receiver shall make ratable dividends of the moneys realized or collected by him on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and the remainder of the proceeds, if any, after the costs and expenses of such proceedings and all debts and obligations of the bank are satisfied, shall be paid over to the stockholders of such bank, or their legal representatives, in proportion to the stock by them respectively held."

Application of this statute would, of course, be obvious if there were here just one bank, say a general or commercial bank, and we think it hardly less obvious where, as here, there are two banks, commercial and savings, combined as the statute permits. 3 Comp. Laws 1929, §§ 11898, 11899.

The savings deposits on hand and investments made from savings deposits are impressed with a trust in favor of savings depositors, who are entitled to have such assets applied first to the payment of their claims, and such of them as make due claim to the receiver may share, ratably, as the statute provides.

The statute last quoted must be read in connection with that first quoted and with the sections cited, permitting combination of banks, and when so read it appears that distribution of savings assets must be ratable, likewise distribution of commercial assets.

This question was, in substance, presented to the court in *Peters* v. *Union Trust Co.*, 131 Mich. 322, and answered as here.

A leading and supporting case, in which this question and others hereinafter noted were considered, is *Upham* v. *Bramwell,* 105 Ore. 597 (209 Pac. 100, 25 A. L. R. 919). See, also, *Com'r of Banks, in re Prudential Trust Co.,* 240 Mass. 478 (134 N. E. 253); *Com'r of Banks, in re Cosmopolitan Trust Co.,* 241 Mass. 346 (136 N. E. 269); *Dole* v. *Chattabriga,* 82 N. H. 396 (134 Atl. 347); *Kelly* v. *Com'r of Banks,* 239 Mass. 298 (131 N. E. 855).

It is urged that inconvenience in banking results from enforcement of the law. As was said in the *Peters Case,* we are not concerned in this, the legislative intent being clear. It is also contended that in practice the law is not well observed. Violation of the law does not accomplish its repeal. Because of today's financial stress we are urged by counsel to overrule the *Peters Case,* and, in effect, to give construction to the statute without its meaning. Other counsel vigorously urged adherence to the *Peters Case.*

The obligations of the depository bank, created by the statute, were carried into and became a part of every contract of deposit in the savings department. *Upham* v. *Bramwell, supra,* 622. By the insolvency, the depositors' rights have become fixed and may not be impaired.

Moreover, this statute, then substantially the same, was passed upon in the *Peters Case* nearly 30 years ago, and decision made unanimously after due consideration. Depositors in this State have a right to expect, with confidence, that the decision, while the statute remains, will be adhered to. 15 C. J. p. 919, and cases cited.

Savings banks in their beginning were authorized in aid of persons of small means to provide security for their money and to engender "habits of industry and frugality." 7 C. J. p. 851. And from the public

standpoint that is their chief purpose today. The statute, in furtherance of such purpose, is supported by sound considerations of public policy, and the decision in the *Peters Case* is likewise supported. This holding is not affected by amendatory Act No. 21, Pub. Acts 1931 (amending 3 Comp. Laws 1929, § 11932).

*Second question:* "If there be insufficient proceeds from the liquidation of investments of the savings department to pay the savings depositors in full, are the savings depositors entitled to share in the balance of the assets of the bank with other claimants, and if so in what ratio?"

*Answer:* Yes, ratably.

Savings depositors are general creditors in the amount of their deposits remaining unpaid after application of the savings assets.

The banking corporation itself is entitled to all profits and is liable for all debts.

The commercial bank is the general bank. If there be an actual excess of savings assets over total of claims of savings depositors, such excess is free from the trust imposed and goes to the general bank for ratable distribution. If there be insufficient savings assets to pay claims of savings depositors, it follows that such depositors are general creditors of the banking corporation for the amounts of insufficiency, and in this regard they share ratably with other general creditors of the bank. The general creditors as a whole class are (1) commercial depositors, (2) other unsecured general creditors, and (3) the savings depositors for the amounts due them after their statutory preference is exhausted. Among general creditors the statute creates no preference. When, in the savings department, the total of reserve and investments equals the total of deposits the law is satisfied.

*Third question:* "Where a portion of the investments of the savings department of a bank are so involved in litigation that it will be impossible to ascertain what amount will be ultimately available from the savings investments of the bank, is the receiver justified in paying any liquidation dividends to other than savings depositors?"

*Answer:* No, on facts stated in the question, but see answer to the next question.

*Fourth question:* "Under section 11962, 3 Comp. Laws 1929, is the receiver justified in paying any dividends to other than savings depositors until it has been finally determined what assets are available?"

*Answer:* Yes, with limitations.

We quote from brief of counsel:

"We can conceive of no difficulty for a receiver who is acquainted with the banking business and knows values of securities, being able to determine at least within reasonable limits the net assets of each department in his charge. When cash becomes available, certainly a dividend can be paid out of the commercial department provided that dividend is kept within a range of safety."

This implies use of judgment. Caution must be exercised by the court to keep within the "range of safety" to the end that no detriment shall be suffered by savings depositors in respect of their right discussed in answer to first question.

*Fifth question:* "Where loans are made by a bank and securities which belong to the savings department are pledged as collateral security for the repayment of such loans, must such loans be paid from the general assets of the bank and such pledged securities held solely for the benefit of savings depositors?"

*Answer:* Yes.

All counsel are agreed that, the first question being answered in the affirmative, this question must be answered likewise. We quote from *Com'r of Banks* v. *Cosmopolitan Trust Co.*, 240 Mass. · 254 (133 N. E. 630):

"The securities of the savings department, which were pledged by the trust company as security for a loan used by its commercial department were trust property. * * * It became the instant duty of the plaintiff, when he took possession, to restore to the savings department the securities abstracted therefrom and put to the unlawful use. It was his obligation to use the resources of the commercial department for the purpose of repairing the breach of trust committed by the trust company against the depositors in the savings department. His duty was to pay the notes, thus to release the pledged securities and to replace them in position to protect the depositors in the savings department."

The question and the decision imply the tracing to and finding in the general bank the trust funds of the savings depositors. The question merely touches the matter of tracing trust funds. A variety of situations may confront receivers, which cannot be anticipated. There is abundant authority on the question. We cite a few cases. See *Patek* v. *Patek,* 166 Mich. 446 (35 L. R. A. [N. S.] 461); *Sherwood* v. *Central Michigan Savings Bank,* 103 Mich. 109; *State Banking Com'r* v. *E. Jossman State Bank,* 185 Mich. 24 (Ann. Cas. 1917 C, 1203); *Wisconsin, etc., Bank* v. *Manistee Salt & Lbr. Co.,* 77 Mich. 76.

*Sixth question:* "Under section 11928, 3 Comp. Laws 1929, providing for the keeping of investments relating to savings department entirely separate and apart, is the receiver justified in permitting a set-off of a savings deposit against a commercial obligation?"

*Answer:* Yes.

We are requested by counsel to speak further on the question of set-off. We do it, and quote the true rule from *Upham* v. *Bramwell, supra:*

"To allow a depositor in the commercial department of the bank to set off his deposit against his debt to the savings department would have the effect of diverting funds and assets held solely for the special purpose of repaying savings depositors, and using them to pay the liability and obligation of the bank to a commercial depositor. This, we think, is prohibited by the statute, and in such cases the right of set-off cannot be allowed, and to that extent the general rules of equitable set-off are limited by the statute.

"Diversion of savings assets to a prohibited use or purpose does not result where a savings deposit is offset by a debt to the savings department or to the commercial department, or where a commercial deposit is offset by a debt to the commercial department, and in those cases the right of set-off is not affected by the statute."

*Seventh question:* "From what source should the expenses of administration of the receivership be taken, and should the savings investments be charged with any portion of such expense?"

*Answer:* There is primary liability for expenses of administration to be paid from funds in hands of receiver, and savings assets are chargeable with a just and equitable part of the expenses of liquidation. What is a just and equitable part must depend on the circumstances of the particular case.

*Eighth question:* "Can the proceeds of stock assessments under the statutory double liability be paid out by way of liquidation dividends before it is actually determined that there will be insufficient

assets with which to meet the obligations of the bank?"

*Answer:* Yes.

All counsel agree on this question. See *Foster* v. *Row*, 120 Mich. 1 (77 Am. St. Rep. 565); 3 Comp. Laws 1929, §§ 11959, 11962, 11945, 12028.

*Ninth question:* "How should the general assets of the bank, which are carried as combined account assets and which do not relate specifically to either savings investments or commercial investments, be apportioned among the claimants of the bank?"

*Answer:* Any and all assets of the bank, not assigned or allocated to savings department, and to which no trust in favor of savings depositors is attachable, are general assets of the bank.

*Tenth question:* "If it be determined that the savings depositors are entitled to share in the balance of the assets of the bank after the savings department assets are exhausted, shall the ratio of division be determined by the proportion of savings claimants to commercial claimants as of the date of the closing of the bank or on the basis of claims actually filed?"

*Answer:* On the basis of claims actually filed. 3 Comp. Laws 1929, § 11961; *Citizens' Sav. Bank* v. *Ingham Circuit Judge*, 98 Mich. 173; *Bissell* v. *Heath*, 98 Mich. 472; 53 C. J. p. 237.

*Eleventh question:* "Can a deposit in the bank be set off where the depositor's debt to the bank is secured by collateral?"

*Answer:* Yes.

All counsel agree. The matter is fully covered in brief of the attorney general, to which attention of those desiring to pursue the question is directed.

*Twelfth question:* "Can a deposit in the bank, in case the bank becomes insolvent, be set off against a stockholder's statutory liability?"

*Answer:* No, with this qualification—where the statutory assessment against the stockholder has not been paid, the receiver may and should apply any dividend on the deposit of the stockholder toward payment of his assessment. *Wedemeyer* v. *Hindelang,* 161 Mich. 600.

Ordered transmitted and the circuit court advised accordingly.

McDONALD and WIEST, JJ., concurred with CLARK, C. J.


NORTH, J. (*concurring in part*). For the reasons hereinafter indicated I am not in accord with some phases of Chief Justice CLARK's opinion.

While the statutory law of this State permits a single corporation to conduct a commercial banking business, a savings banking business, and also a trust business, the certified questions submitted concern only matters pertaining to its banking departments. Certain phases of the trust business of such a corporation as related to its banking business are considered in *Reichert* v. *Fidelity Bank & Trust Co., post,* 535. Here we are primarily concerned with the proper distribution of the assets of the commercial banking department and the savings banking department of the corporation when in the hands of a receiver. The most serious difficulty arises from a seeming conflict between section 11928 and section 11962, 3 Comp. Laws 1929. The former provides a preference for savings depositors in the event of the liquidation of the corporation, while the latter requires the receiver to "make ratable divi-

dends'' on all proven claims. The material portions of the respective sections read:

Section 11928. ''Any bank combining the business of a commercial bank and a savings bank, and operating an industrial loan department shall keep separate books of account for each kind of business: * * * *Provided further, That all the investments relating to the savings department shall be kept entirely separate and apart from the other business of the bank, and that the reserve required by the provisions of this act to be kept on the savings deposits, shall be kept separate and distinct on the books of the bank from the reserve required on the commercial deposits, and that such portion of said savings deposits as are on hand unloaned or deposited with other banks or reserve agents and the investments made with the funds deposited by savings depositors shall be held solely for the payment of depositors of said funds:''*

Section 11962: ''From time to time under the direction of the commissioner of the banking department, the receiver shall make ratable dividends of the moneys realized or collected by him on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction.''

*Ratable dividends.* This provision was in the banking statute of this State as passed in 1887, Act No. 205. (See 3 How. Stat. § 3208-f6.) It has continued therein unchanged to the present day. It was a part of the statute before the act contained any provision for the separation of savings assets from commercial assets. So obviously ''ratable dividends,'' as the statute then stood, were to be paid in case of liquidation indiscriminately from all the assets of the bank to all of its depositors and other creditors. So far as consistent with proper

statutory construction, this provision should be held to have the same meaning now as when first embodied in the statutory law.

In 1893 by amendment of the banking act the provisions above italicized in section 11928 requiring separation of the assets of the savings department from those of the commercial department and giving savings depositors a preference in certain assets were added. This amendment sought to accomplish only one thing, and that was to give the savings depositors a preference in that portion of their deposits held by the bank in cash or on deposit in other banks and the investments made out of savings deposits. Some confusion seems to have arisen from the assertion in certain adjudicated cases that the relation of the savings depositor is that of a *cestui que trust,* while the commercial depositor is said to be only an ordinary creditor of the bank. In a limited sense there is a trust relation between the bank and each of its depositors, commercial or savings. But under our statute the relation of the bank to both its commercial and savings depositors is fundamentally that of debtor and creditor. The only difference is that to the extent provided in section 11928, 3 Comp. Laws 1929, a preference is given to those creditors who are such by reason of their savings deposits. They simply have a first call on certain assets of the bank, a lien enforceable in the event of liquidation; but this does not result in a trust relation any more than does the giving of a mortgage create a trust relation between the mortgagor and mortgagee. In each case the creditor has a preference as against certain assets of his debtor.

If there is no special trust relation, then, subject to the statutory preference, the assets of the bank

in the receiver's hands should be "ratably" distributed to all its depositors and other creditors exactly the same as under the earlier statutory provisions. This means at the close of the receivership each depositor, whether in the commercial department or in the savings department, should have been repaid an equal proportion of his deposit, subject only to the savings depositors' statutory preference. This will be accomplished if after paying savings depositors such liquidation dividends as are assured them by their statutory preference, no further payments are made to them until the commercial depositors and other general creditors have been paid from other assets of the bank an equal percentage. When this is done, a point of "ratable" distribution will have been reached, if such a result is possible in view of the statutory preference given savings depositors; and also there will have been full compliance with the provision of the statute which gives savings depositors a limited preference. Thereafter the remaining assets should be ratably distributed among all creditors of the corporation.

Thus construed, there is no material conflict between the two statutory provisions. Each, as far as it is possible, is given full force and effect. The savings depositors will obtain their statutory preference, and "ratable" distribution of the assets of the bank, if possible of accomplishment under the statute, will result; and, it would seem, the closing up of the affairs of the bank by the receiver will be greatly expedited. The specific question under consideration was not presented to or passed upon by the court in *Peters* v. *Union Trust Co.*, 131 Mich. 322, nor does it seem to have been adjudicated by any other decision in this State.

*Set-off.* In the manner and subject to the qualifications pointed out by Mr. Justice Fead in *Reichert* v. *Fidelity Bank & Trust Co., supra,* set-off should be allowed regardless of the fact that the customer's obligation may be held by one department and the deposit which he seeks to set off is in the other department of the bank. However, the question of the right of a stockholder to set off his deposit in the insolvent bank against his statutory stockholder's liability (3 Comp. Laws 1929, § 11945) is not within the scope of the *Fidelity Bank & Trust Co. Case.* This is noted in Justice Fead's statement:

"The profession will appreciate that only mutual credits and debits, not impressed with a special contract or status, are under consideration."

As pointed out in *Wingate* v. *Orchard,* 21 C. C. A. 315 (75 Fed. 241), and in many of the authorities hereinafter noted, the funds obtained by the enforcement of stockholders' liability have a special status "to make good all contracts, debts, and engagements of such association equally and without any preference;" hence the stockholder depositor is not allowed to pay himself in full by setting off his deposit against his liability; and to hold otherwise "would be, in effect, to make him a preferred creditor."

For brevity we cite, without quoting, authorities to the point that (1) the stockholders' liability is primarily statutory rather than contractual; and (2) the stockholder's deposit in an insolvent bank cannot be set off against his statutory liability. Most Federal decisions are under the stockholders' liability section of the National banking act (R. S. § 5151 [12 USCA, § 63]), which in this particular is quite identical with the Michigan statutory provision.

(1)   The stockholder's liability is primarily statutory rather than contractual. *Platt* v. *Wilmot,* 193 U. S. 602 (24 Sup. Ct. 542); *Christopher* v. *Norvell,* 201 U. S. 216 (26 Sup. Ct. 502); *First Nat. Bank of Concord* v. *Hawkins,* 24 C. C. A. 444 (79 Fed. 51); *Scott* v. *Latimer,* 33 C. C. A. 1 (89 Fed. 843); Magee on Banks & Banking (2d Ed.), p. 83.

(2)   Because the stockholder's double liability is primarily statutory, and because of lack of mutuality, and also because of the preference he would otherwise obtain, he cannot set off his deposit in an insolvent bank against his statutory liability. *Wingate* v. *Orchard, supra,* citing, on the principle involved, *Delano* v. *Butler,* 118 U. S. 634 (7 Sup. Ct. 39); *Mechanics' Savings Bank* v. *Federal Ins. Trust & S. D. Co.,* 87 Fed. 113; *Lantry* v. *Wallace,* 38 C. C. A. 510 (97 Fed. 865); *Williams* v. *Rose,* 218 Fed. 898; *Wehby* v. *Spurway,* 30 Ariz. 274 (246 Pac. 759); *McDonald* v. *McFerson,* 80 Colo. 4 (249 Pac. 496); *Ball Electric Light Co.* v. *Child,* 68 Conn. 522 (37 Atl. 391); *Buchanan* v. *Meisser,* 105 Ill. 638; *Hughes* v. *Marvin, Banking Com.,* 216 Ky. 190 (287 S. W. 561); *Matthews* v. *Albert,* 24 Md. 527; *Shickle* v. *Watts,* 94 Mo. 410 (7 S. W. 274); *Barth* v. *Pock,* 51 Mont. 418 (155 Pac. 282); *Matter of Empire City Bank,* 18 N. Y. 199; *Parker* v. *Carolina Savings Bank,* 53 S. C. 583 (31 S. E. 673, 69 Am. St. Rep. 888); 1 Bolles, Modern Law of Banking, p. 170; 1 Morse on Banks & Banking (6th Ed.), p. 788; 3 Michie, Banks & Banking, p. 175.

Neither *Scott* v. *Armstrong,* 146 U. S. 499 (13 Sup. Ct. 148), nor *Thompson* v. *Union Trust Co.,* 130 Mich. 508 (97 Am. St. Rep. 494), cited by Mr. Justice POTTER, involves the right of set-off of a stockholder's deposit against his statutory liability.  On this

ground the inapplicability of the *Scott Case* is emphasized in *Wingate* v. *Orchard, supra.*

In view of our statutory provision (3 Comp. Laws 1929, § 11945), it must be held that a stockholder in an insolvent bank cannot minimize his statutory liability by setting off the amount of his deposit.

*Savings investments.* In the briefs filed herein it is pointed out that there is difficulty in determining whether certain assets are investments of savings deposits. The bank officers have the authority to transfer assets from one department to the other as long as they are lawfully in that department. In the absence of fraud or irregularity, the assets shown upon the books as savings assets at the time the bank closed belong to that department. If they are there by proper action of the officers no further tracing back to the fund is necessary. Section 49 of the banking act (3 Comp. Laws 1929, § 11946) covers the matter of improper and fraudulent transfer of assets from one department to the other by declaring such transfer void. Aside from the assets properly appearing on the books as belonging to the savings department, none can be included in the statutory preference given savings depositors except such as can be clearly traced and identified as assets directly or indirectly resulting from investments of savings deposits for which the savings department has not been reimbursed. The preference of the savings depositors goes only to the amount of savings assets represented by savings deposits and does not cover investments from capital stock.

Without further enlargement upon the matter of proper statutory construction, the submitted special questions may be answered as follows:

*First Question:* "Under section 11928, 3 Comp. Laws 1929, must the investments of the savings de-

partment of a State bank be held solely for the benefit of savings depositors?"

*Answer:* Yes.

*Second Question:* "Where a portion of the investments of the savings department of a bank are so involved in litigation that it will be impossible to ascertain what amount will be ultimately available from the savings investments of the bank, is the receiver justified in paying any liquidation dividends to other than savings depositors?"

*Answer:* Yes, provided the receiver retains sufficient assets to insure .the payment of a percentage of savings depositors' claims equal to that paid on claims of commercial depositors.

*Third Question:* "Under section 11962, 3 Comp. Laws 1929, is the receiver justified in paying any dividends to other than savings depositors until it has been finally determined what assets are available?"

*Answer:* Yes, providing the receiver retains sufficient assets to insure payments on savings depositors' claims ratable with those paid other depositors.

*Fourth Question:* "If there be insufficient proceeds from the liquidation of investments of the savings department to pay the savings depositors in full, are the savings depositors entitled to share in the balance of the assets of the bank with other claimants, and if so in what ratio?"

*Answer:* Yes, provided the assets other than those in which savings depositors have a statutory preference are sufficient to insure payments to commercial depositors ratable with those paid to savings depositors. Distribution should be ratable on the basis of proven claims.

*Fifth Question:* "Where loans are made by a bank and securities which belong to the savings department are pledged as collateral security for the repayment of such loans, must such loans be paid from the general assets of the bank and such pledged securities held solely for the benefit of savings depositors?"

*Answer:* Yes, except in so far as the savings department has been reimbursed.

*Sixth Question:* "Under section 11928, 3 Comp. Laws 1929, providing for the keeping of investments relating to savings department entirely separate and apart, is the receiver justified in permitting a set-off of a savings deposit against a commercial obligation?"

*Answer:* Yes.

*Seventh Question:* "From what source should the expenses of administration of the receivership be taken and should the savings investments be charged with any portion of such expense?"

*Answer:* Expenses of administration are a first charge against assets in the hands of the receiver, and ordinarily should be paid from general assets; but the whole or any just proportion of expenses incident to special services in conserving or liquidating savings assets may be made a charge against such assets.

*Eighth Question:* "Can the proceeds of stock assessments under the statutory double liability be paid out by way of liquidation dividends before it is actually determined that there will be insufficient assets with which to meet the obligations of the bank?"

*Answer:* Yes. This liability is fixed by statute, and if any portion of the assessment is not required

to pay creditors or expenses of administration it will be returned to the assessed stockholders. *Petty* v. *Bay City Bank,* 243 Mich. 362.

*Ninth Question:* "How should the general assets of the bank which are carried as combined account assets and which do not relate specifically to either savings investments or commercial investments be apportioned among the claimants of the bank?"

*Answer:* Subject to the limitations in the answer to the fourth question, such general assets should be distributed ratably to all creditors. This answer does not apply to items nominally carried as combined account assets, but which are readily traceable and identified as savings department assets.

*Tenth Question:* "If it be determined that the savings depositors are entitled to share in the balance of the assets of the bank after the savings department assets are exhausted, shall the ratio of division be determined by the proportion of savings claimants to commercial claimants as of the date of the closing of the bank or on the basis of claims actually filed?"

*Answer:* On the basis of claims filed and accepted or proven. But see also answer to fourth question.

*Eleventh Question:* "Can a deposit in the bank be set off where the depositor's debt to the bank is secured by collateral?"

*Answer:* Yes.

*Twelfth Question:* "Can a deposit in the bank in case the bank becomes insolvent be set off against a stockholder's statutory liability?"

*Answer:* No.

The foregoing answers are framed on the basis of the record in the instant case and are in the nature

of general rules which of necessity will be subject to such modifications or qualifications as may be compelled in the just disposition of any particular case. The answers to the certified questions will be transmitted to the circuit court and disposition of the case made in accordance therewith.

SHARPE, FEAD, and BUTZEL, JJ., concurred with NORTH, J.

POTTER, J. The following questions were certified to this court by Hon. John Simpson, judge of the circuit court for the county of Jackson, as being involved in the above entitled cause pending therein, in chancery.

"1. Under section 11928, 3 Comp. Laws 1929, must the investments of the savings department of a State bank be held solely for the benefit of savings depositors?

"2. Where a portion of the investments of the savings department of a bank are so involved in litigation that it will be impossible to ascertain what amount will be ultimately available from the savings investments of the bank, is the receiver justified in paying any liquidation dividends to other than savings depositors?

"3. Under section 11962, 3 Comp. Laws 1929, is the receiver justified in paying any dividends to other than savings depositors until it has been finally determined what assets are available?

"4. If there be insufficient proceeds from the liquidation of investments of the savings department to pay the savings depositors in full, are the savings depositors entitled to share in the balance of the assets of the bank with other claimants, and if so in what ratio?

"5. Where loans are made by a bank and securities which belong to the savings department are pledged as collateral security for the repayment

of such loans, must such loans be paid from the general assets of the bank and such pledged securities held solely for the benefit of savings depositors?

"6. Under section 11928, 3 Comp. Laws 1929, providing for the keeping of investments relating to savings department entirely separate and apart, is the receiver justified in permitting a set-off of a savings deposit against a commercial obligation?

"7. From what source should the expenses of administration of the receivership be taken, and should the savings investments be charged with any portion of such expense?

"8. Can the proceeds of stock assessments under the statutory double liability be paid out by way of liquidation dividends before it is actually determined that there will be insufficient assets with which to meet the obligations of the bank?

"9. How should the general assets of the bank which are carried as combined account assets and which do not relate specifically to either savings investments or commercial investments be apportioned among the claimants of the bank?

"10. If it be determined that the savings depositors are entitled to share in the balance of the assets of the bank after the savings department assets are exhausted, shall the ratio of division be determined by the proportion of savings claimants to commercial claimants as of the date of the closing of the bank or on the basis of claims actually filed?

"11. Can a deposit in the bank be set off where the depositor's debt to the bank is secured by collateral?

"12. Can a deposit in the bank in case the bank becomes insolvent be set off against a stockholder's statutory liability?"

The statutes provide for commercial banks, section 11917, 3 Comp. Laws 1929, and savings banks, section 11920, 3 Comp. Laws 1929, as well as trust

companies, section 11997, 3 Comp. Laws 1929, and industrial banks, sections 11926, 11973, 3 Comp. Laws 1929. Any bank may, by complying with the statute, qualify to do any or any combination of these kinds of business. It is its duty, if it does so, to keep separate books for each kind of business, section 11929, 3 Comp. Laws 1929. Receipts, investments, and transactions relating to each class of business are governed by the provisions and restrictions provided for the respective kinds of banks, section 11928, 3 Comp. Laws 1929. All the investments relating to the savings department are to be kept entirely separate and apart from the other divisions of the bank, and the reserve required by the banking act to be kept on savings deposits is to be kept separate and distinct, on the books of the bank, from the reserve required on commercial deposits, and such portion of the savings deposits as are on hand unloaned, or deposited with other banks or reserve agents, and the investments made with the funds deposited by savings depositors are to be held solely for the payment of depositors of such funds, section 11928, 3 Comp. Laws 1929. When a receiver is appointed he is to make ratable dividends of the moneys collected by him on all claims proven and established, section 11962, 3 Comp. Laws 1929. This section of the statute, when construed with that permitting a bank to engage in two or more kinds of banking, provided it keeps the business, deposits, investments, and other things separate, means the bank is, in reality, two or more banks, if engaged in two or more kinds of business, so far as winding up its affairs is concerned. Savings depositors are entitled to be ratably paid from all assets allocated to the savings department. Commercial depositors are entitled to be ratably

paid from what is realized from the assets of the commercial department, just as if there were two banks, so far as investments in each department are concerned. If there is a surplus realized from assets in either department, above the amount of claims proven, it belongs to the bank and should be disposed of as general funds. The capital stock, though a liability, is the stake of the stockholders in the bank. It and the surplus are advanced by them as their guarantee to the depositors of the safety of their deposits and the guarantee of their loans. If there is a surplus of assets above all liabilities and expenses of receivership, the stockholders may receive ratable dividends from this surplus, on their stock. In addition to surplus and capital stock, there is back of the bank the statutory stockholders' liability. In winding up a bank engaged in both commercial banking and savings banking, all assets in the commercial department are to be liquidated and applied ratably, less expenses allocated to the commercial department to the payment of commercial claims proved and established, any surplus to be held by the receiver and accounted for and disposed of as general funds.

The assets of the savings department are to be liquidated and paid ratably on claims proved and established against that department in the same way, and any surplus is to be held and disposed of as general funds.

The banking act recognizes general powers and privileges as well as general restrictions and limitations which govern commercial banks, savings banks, and those combining both branches of the banking business. Section 11934, 3 Comp. Laws 1929.

Surplus, capital stock, any excess of assets above liabilities in any department, proceeds from the enforcement of stockholders' liability, furniture and fixtures, supplies, banking house, perhaps other items are general funds; and rent, heat, light, salaries, office expense, and expenses of receivership and perhaps other items are general expenses, and these general assets, less general liabilities, should be allocated to the commercial and savings departments in the ratio the claims in either department proven and established bear to the total claims established, and general claims paid therefrom in proportion to the assets allocated to each department.

In *McGraw* v. *Union Trust Co.*, 135 Mich. 609, it was held a claim for rent against a bank having both a commercial and savings department "should be paid proportionately out of the assets of both departments of the bank. As these departments were both conducted by the bank, it is only right they should bear the liability *pro rata* growing out of making the lease."

There is no necessity of holding up the payment of dividends when they may be safely paid, on the claims proven and allowed against either department of the bank.

Dividends should be paid upon the claims proven against either department as soon as the assets of that department can be liquidated to the best advantage of the bank and its creditors, subject, of course, to payment of general claims.

There is no express provision in the banking statutes relating to set-off. Judgments may be set off, section 14132, 3 Comp. Laws 1929. Executions may be set off, section 14550, 3 Comp. Laws 1929. Lia-

bility on contracts may be set off, sections 16039, 14132, 3 Comp. Laws 1929.

Subdivision 9 of both sections 14132 and 16039, 3 Comp. Laws 1929, provides:

"If the suit be in the name of a plaintiff who has no real interest in the contract upon which the suit is founded, so much of a demand existing against those whom the plaintiff represents, or for whose benefit the action is brought, may be set off as will satisfy the plaintiff's debt if the same might have been set off in an action brought by those beneficially interested."

The relation between a bank and its depositor is that of debtor and creditor. The relation between a borrower from the bank and the bank is that of debtor and creditor.

A receiver appointed for an insolvent bank takes the assets of the bank subject to all the claims and defenses that might have been enforced against the corporation. *Scott* v. *Armstrong,* 146 U. S. 499 (13 Sup. Ct. 148); *Thompson* v. *Union Trust Co.,* 130 Mich. 508 (97 Am. St. Rep. 494).

"It is well settled that, in a suit by a receiver of an insolvent bank upon a note or obligation due the bank, the defendant will be allowed to set off his deposit or a certificate of deposit held by him at the time of the suspension of the bank." *Thompson* v. *Union Trust Co., supra.*

"The principle is well settled that the deposits and notes of the same person in an insolvent bank can be set off against each other even before the maturity of the notes in the hands of the bank." *State Banking Com'r* v. *E. Jossman State Bank,* 185 Mich. 24 (Ann. Cas. 1917C, 1203).

In view of the broad scope of the statutes regulating the right of set-off, the statute making the gen-

eral powers and privileges and general restrictions and limitations in the banking statute applicable to banks doing both a savings bank and commercial banking business, section 11934, 3 Comp. Laws 1929, and the prior decisions of this court construing them, it seems clear, upon principle and authority, set-off may be enforced whether the debt is owing to the savings department or the commercial department, and whether the deposit is in the savings department or commercial department of the bank. The right of set-off is not limited by the division by the bank into departments or the assignment by the bank of notes or other debts due it to one department or the other of the bank.

Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference. It is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent. *Scott* v. *Armstrong, supra; Thompson* v. *Union Trust Co., supra,* and cases cited.

The statute provides:

"The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, to satisfy the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock. * * * Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver, or other officer succeeding to the legal rights of said bank." Section 11945, 3 Comp. Laws 1929.

The banking act permits corporations to engage in the banking business. Banking is subject to public regulation. Banks accept the deposit of money. The depositor in a bank is entitled to be

paid on demand. The statute recognizes this liability on the part of the bank. It makes the capital stock, surplus, undivided profits, and stockholders' liability general assets in the hands of the bank, or anyone who succeeds to the legal rights of the bank, to pay its liability to depositors and others,—to satisfy the obligations of the bank, subject only to the limitation that the stockholders of the bank shall not be liable to an amount greater than double the par amount of their share in the capital stock. What is the nature of this statutory liability, and may the deposits of a stockholder in the bank be set off against this statutory liability?

There is no unanimity of decision, because no uniformity of statutes relating to the right to set off the debts of a bank against a stockholder's statutory liability. Many text-writers deny a right of set-off, notwithstanding such right has been repeatedly recognized and distinctly and expressly affirmed.

"Whether a debt due him by the corporation may be set off by a stockholder in an action against him on his statutory liability is a disputed question, the solution of which depends largely upon the provisions of the statute of the particular State and the mode in which the liability created by it is enforced. In some jurisdictions such set-off is permitted, but in others the right to do so is denied." 26 Am. & Eng. Enc. Law (2d Ed.), p. 1051.

The liability arises from statute, but it is not strictly a statutory liability. It is contractual in its nature. If such liability were purely statutory, legislation subsequent to the stockholder acquiring stock might abolish his statutory liability and impair the security of the depositor. Neither the officers and directors of the bank nor the stock-

holders thereof nor the legislature itself, may take away this stockholders' liability, when it has once accrued, because such liability is contractual, and the legislature of the State has no constitutional right to pass any law which impairs the obligation of contracts.

"The statutory liability of the stockholders for the debts of a corporation establishes a contractual relation between the stockholders and the creditors, which, as to stock already issued and debts already incurred, may not be altered without impairing the obligation of the contract as to one party or the other." 12 C. J. p. 1062.

It has been held both by the Federal courts and by this court that the liability of a stockholder for an amount in excess of the capital stock of the corporation is contractual in its nature. *Whitman* v. *Oxford Nat. Bank,* 176 U. S. 559 (20 Sup. Ct. 477); *Platt* v. *Wilmot,* 193 U. S. 602 (24 Sup. Ct. 542); *McClaine* v. *Rankin,* 197 U. S. 154 (25 Sup. Ct. 410); *Christopher* v. *Norvell,* 201 U. S. 216 (26 Sup. Ct. 502); *Western Nat. Bank* v. *Lawrence,* 117 Mich. 669; *Foster* v. *Row,* 120 Mich. 1 (77 Am. St. Rep. 565); *Pettibone* v. *McGraw,* 6 Mich. 441; *Peck* v. *Miller,* 39 Mich. 594.

Generally, the liability of stockholders in a corporation may be enforced by the creditor of the corporation who must recover a final judgment against the corporation, and have an execution against its assets returned unsatisfied before he can enforce the stockholder's individual liability. Under the banking act the individual stockholder is not liable to creditors. He is liable to the bank. This liability is not to be enforced by creditors. It is to be enforced by the bank in process of liquida-

tion, by the receiver, or other officer succeeding to the rights of the bank.

If the liability of the stockholder was to the creditors of the bank and not to the bank, it would be necessary for a receiver in winding up the affairs of an insolvent bank to determine, as to each claim established against the bank, who were the stockholders therein at the time the indebtedness of the bank to the creditor arose. The Michigan statute was framed so that "the purchaser of stock takes it, as a proportionate share of the bank's assets, subject to the bank's debts." *Foster* v. *Row, supra,* 14. A stockholder in a bank "is one of the associates in the bank, and by the very terms of the association he is deemed to undertake for the debts which the bank contracts." *Grand Rapids Sav. Bank* v. *Warren,* 52 Mich. 557.

The statutory liability of a stockholder in a bank is therefore primary and not secondary. He is not a surety but a principal. He is not liable only when the bank's other assets are exhausted. He assumes liability when he acquires his stock. In case of insolvency and a receivership, the fund arising from this statutory liability should become immediately available when the necessity for its use is determined and the amount fixed. *Foster* v. *Row, supra.* The stockholder's statutory liability is a part of the assets of the bank so long as there remain claims of creditors to be enforced against the bank. *Richmond* v. *Irons,* 121 U. S. 27 (7 Sup. Ct. 788); *Schalucky* v. *Field,* 124 Ill. 617 (16 N. E. 904, 7 Am. St. Rep. 399); *Mokelumne Hill Canal & Mining Co.* v. *Woodbury,* 14 Cal. 265; *Corning* v. *McCullough,* 1 N. Y. 47 (49 Am. Dec. 287); *Harger* v. *McCullough,* 2 Denio (N. Y.), 119; *Moss* v. *Oakley,* 2 Hill (N. Y.), 265; *Allen* v. *Sewall,* 2 Wend. (N. Y.), 327.

The objection urged to the set-off of the debts of the bank against stockholder's liability is that it may result in preferential treatment of depositors who are stockholders—in discrimination between the bank's creditors.

Whether the liability to assessment of a stockholder in a bank is statutory or contractual or both, it is a liability to pay, in case there is deficiency in assets. It arises from accepting the stock of the bank and signing the stock register. The obligation to pay is no different than the obligation to pay anything else one is legally bound to pay. Whether liability to an insolvent bank is based upon a promissory note for money had and received from the bank or upon the statutory stockholder's liability makes no difference to the debtor or the creditor. Each amounts to a promise to pay; each creates a liability to pay; each constitutes a contract to pay; in each case the liability arises from the obligation of a contract—an obligation which may not be impaired. In each case this obligation is an asset in the hands of the receiver of the bank.

If one owes a promissory note of $1,000 to the bank in the hands of a receiver and has a $1,000 deposit in the bank, the liability of the bank for the deposit may be set off against the liability of the maker of the note. If the receiver finally pays but 50c on a dollar to the bank's creditors, it is clear the depositor whose note was paid by a set-off of his deposit has had a $1,000 note paid with something worth but $500 and has received a preference over other depositors. But this is legal. *Thompson* v. *Union Trust Co., supra.*

Where an insolvent bank has irresponsible non-resident stockholders who are depositors, must the receiver pay dividends to them as creditors while

they, at the same time, have not discharged their statutory liability as stockholders, and thus they receive preferential treatment from the receiver in the administration of his trust? The receiver should be permitted to apply their deposit in discharge of their liability to the bank and thus further protect its other creditors. There may be cases where this right of set-off will result in preferential treatment, but they will not be more marked than in the set-off of deposits against notes. Both set-offs find their justification in the basic doctrine that the receiver takes the bank as he finds it—its assets less its liabilities.

A receiver of an insolvent State bank under the law of this State has no real interest in a suit brought to enforce a stockholder's statutory liability. The receiver stands in the place of the bank. The bank itself, if in voluntary liquidation, may sue and recover its assets—enforce the statutory liability of its stockholders. A debt owing by the bank is a legitimate set-off in a suit to enforce a contractual liability to the bank.

This question was not involved in *Wedemeyer* v. *Hindelang,* 161 Mich. 600. That case holds a surplus, created by the stockholders or earned by the bank, may not be set off against a stockholder's statutory liability. The reason is obvious. A bank in operation owes the stockholders the amount of capital stock held by them and their proportionate part of the surplus; but, when a bank becomes insolvent and goes into the hands of a receiver for the purpose of liquidation, both the capital stock and the surplus become assets in the hands of the receiver to pay and discharge the liabilities of the bank. Surplus being an asset in the hands of the receiver, and the stockholders' statutory liability

being. also an asset in the hands of the receiver, may not be set off the one against the other, because assets may not be set off against other assets, but only assets and liabilities may be so set off.

No reasoning is advanced or can be advanced against this proposition that was not considered and answered in *Thompson* v. *Union Trust Co.,* *supra.* The cases all arose under different statutes than ours. They do not represent the law in this State, and did not arise under statutes similar to ours, which expressly provide that such liability may be enforced only by a bank in process of liquidation or by a receiver or other officer succeeding to the legal rights of the bank.

It follows that, subject to the general observations above made, the questions submitted should be answered as follows:

1. Yes; except, if there is a surplus of assets above liabilities, it goes to the general funds of the bank to be disposed of as such; and except the proportionate liability of the assets of the savings department to general liabilities of the bank.

2. Yes; provided sufficient assets are retained in the hands of the receiver to amply meet prospective liabilities.

3. Commercial depositors are to be treated in the same way as savings depositors, in that they are entitled to dividends from the assets of the commercial department, subject to the receiver retaining funds amply sufficient to protect contingent liabilities and general claims.

4. Savings depositors, subject to the payment of general claims, are entitled to all the proceeds of the assets of the savings department, at the time a receiver was appointed. Commercial depositors are entitled, subject to the payment of general claims, to

all the proceeds of the assets of the commercial department. Each department is entitled to share in the proceeds of the general assets of the bank, which are to be divided between the two departments in proportion to the amount of the claims proven and established against each department.

5. Yes.

6. Yes.

7. From general funds. If these are not sufficient, the expenses are chargeable against the two departments of the bank in proportion to the assets in each department.

8. Stockholders' liability is contractual. If the assets of the bank are not sufficient to pay depositors, the receiver is bound to ascertain the amount necessary to meet the deficit, and to enforce this liability. If it shall prove the amount collected is greater than was necessary, the stockholders are entitled to have it paid back to them *pro rata*. *Foster* v. *Row, supra.*

9. In proportion to the claims proven and established against each department.

10. On the basis of claims proven and established.

11. Yes.

12. Yes.