## Cushing's Estate

*Samuel E. Kratzok*, for exceptant.

*Frank J. Strassner, Jr.*, for Edward J. Kirchner, contra.

KLEIN, J., February 28, 1936.—The exceptions to the adjudication are concerned entirely with the ruling of the auditing judge that the estate is entitled to a rebate in the amount of $472.16 against the claim of the receiver of the Sixth National Bank.

The facts are undisputed. At the audit of the account, the exceptant, as receiver of the bank, filed a claim against the estate in the amount of $2,500. This claim represented a stock assessment made by the Comptroller

of the Currency of the United States against 25 shares of stock of the bank which the testator owned at the date of its closing. The liability of the estate for the assessment is admitted.

However, the estate asserts a set-off in the amount of $472.16, which arose in the following manner:

The decedent had been vice president of the bank. During his lifetime he had held title as strawman for the bank to a piece of real estate subject to a mortgage. He had executed to the bank a deed for the property which had, however, never been recorded. Subsequently, the mortgagee instituted foreclosure proceedings on the mortgage and secured a judgment against the executor of the estate in the amount of $472.16 for taxes assessed against the real estate while the title had been registered in the name of the decedent. It is the amount of this judgment, paid by the executor, which the learned auditing judge allowed as a set-off or rebate against the bank receiver's claim.

The liability of shareholders of National banks for the debts of the institution is entirely statutory. It is imposed by section 5151 of the Revised Statutes of the United States and section 23 of the Federal Reserve Act of December 23, 1913, 38 Stat. at L. 251, 12 U. S. C. §§ 63 and 64.

This obligation of shareholders is fundamentally different from the general indebtedness owing to the bank at the date of closing: Wingate v. Orchard, 75 Fed. 241 (C. C. A. 9th, 1896) ; 2 Morse, Banks & Banking (6th ed., 1928) sec. 691.

Clearly, a debtor of a National bank may set off against his indebtedness when asserted by the receiver of the bank any claim he might have set off against the institution. Thus, he may set off the amount of his unpaid deposits in the institution: Scott v. Armstrong, 146 U. S. 499 (1892) ; Gray v. School District of Borough of Brownsville, 67 F. (2d) 141 (C. C. A. 3rd, 1933).

But a shareholder's liability for assessments upon his

shares stands upon an entirely different plane. Thus in Williams v. Rose, 218 Fed. 898 (N. J., 1914), where both situations were presented to the court, a debtor was authorized to set off the amount of his deposit in the bank against the bank's general claim against him, but a shareholder was denied the right to set off his deposit claim against the assessment made against his shares of stock. To the same effect see Wingate v. Orchard, supra.

The purpose of the assessment on shares is to provide a fund at least equal to the capital of the institution out of which all creditors may be paid equally and ratably: Page v. Jones, 7 F. (2d) 541, 544 (C. C. A. 8th, 1925). To allow a creditor with no right superior to that of other creditors to set off against his shareholder's liability his claim against the closed bank would in effect authorize him to be paid unequally and unratably out of the fund. The inequity of such a result is well stated in the leading case of Hobart, Receiver, etc., v. Gould, 8 Fed. 57 (N. J., 1881), where Judge Nixon said at p. 58:

"The demurrer raises the question whether such set-off is allowable; i. e., whether a stockholder of a national bank, who happens also to be a creditor, may cancel or diminish his assessment by offsetting his individual claim against the association.

"Considering the ends plainly in contemplation by the foregoing provisions of the statute, it would seem, upon principle, that no such escape from liability should be permitted by the shareholder. The object of the act was to make the holders of the stock responsible for a trust fund, equal, if necessary, to the amount of the capital of the bank, and to be devoted to the payment of all the creditors alike. If the receiver, in his appeals to the shareholders for the payment of the assessments against them, may be met by their claims as creditors of the association, it is not difficult to imagine cases in which the beneficent object of the law might be wholly defeated. Besides, the right to a set-off in pleading is a creature of

the statute, and applies only to mutual dealings, and no such relations exist between the parties here. The liability to be enforced against the shareholder is not a debt due to the bank, but is a sum of money equal to the par value of his stock, payable by him to the receiver as an officer of the government by force of the law, and the assessment authorized and made by the comptroller. The effect of allowing such a set-off is to give the shareholder an advantage over other creditors. It practically pays his debt in full, and, by leaving so much less for others, diminishes his liability as a stockholder, which it was clearly the design of the law to impose."

To the same effect, see Delano v. Butler, Receiver, 118 U. S. 634, (1886) ; Witters, Receiver, etc., v. Sowles, Exec., et al., 32 Fed. 130 (C. C. Vt., 1887) ; and Roth v. Baldwin, 74 F. (2d) 1003 (C. C. A. D. C., 1934).

In his brief contra exceptions, counsel for the executor cites Welles v. Stout, 38 Fed. 807 (C. C. N. D. Iowa, 1889). That case has no relation to the present one. There the receiver of a National bank instituted action against a shareholder of the institution. The defendant set up as a counter-claim the amount of his proportionate share in a trust fund held by the bank in a fiduciary capacity for a specific purpose. The plaintiff filed a demurrer to the answer and counter-claim.

Judge Shiras said at page 810:

"If the facts pleaded show that the claim amounts only to a debt due from the bank, arising out of the ordinary relation of debtor and creditor, then no facts exist entitling the holder of such a claim to a preference in payment over the other general creditors, and in such cases the stockholder cannot avail himself of the right to set off a debt due him from the bank, for that would be giving him an undue preference at the expense of the other creditors. If, however, the facts pleaded show that the claim sought to be set off is of such a nature that the holder thereof is entitled to receive the full amount thereof from the receiver before distribution in the way

of dividends can be made to the general creditors, then the right to set off may be allowed."

The court overruled the demurrer, directing that the matter be heard on evidence to determine whether the receiver was merely misapplying funds which he was holding as trustee or whether he would be justified in treating such funds as general assets of the bank. In the former case, the counterclaim would be valid; in the latter, it would be invalid.

No such situation exists in the present case. The claim of the executor for the amount paid on the judgment for taxes is a general claim against the institution and the status of the executor is only that of a general creditor.

The cases relating to resulting trusts cited by counsel for the executor likewise have no bearing on the question to be decided. The fact that a resulting trust was created when the decedent took title to the real estate for the bank is not disputed. The problem before us is the method of repayment to the trustee for necessary expenses incurred while the trust relationship existed.

If the real estate which was the subject of the trust were still in possession of the executor, and had value, our problem would be simple. The executor would be entitled to indemnity out of the trust estate for expenses properly incurred by him, or by the decedent, in the administration of the trust. See section 244, comment c. of the Restatement of the Law of Trusts, which provides as follows:

"To the extent to which the trustee is entitled to indemnity, he has a security interest in the trust property. He will not be compelled to transfer the trust property to the beneficiary . . . until he is paid or secured for the amount of expenses properly incurred by him in the administration of the trust."

But unfortunately for the estate, no trust property remains. The foreclosure divested the entire interest of both the decedent and the bank in the real estate.

Of course, the executor has a claim against the bank

for reimbursement for the taxes he has been compelled to pay: Pennsylvania Co., etc., Trustee, v. Bergson, 307 Pa. 44 (1932). But this claim is an ordinary claim in assumpsit, which must be presented to the receiver in the manner provided by Federal law for the presentation of claims of general creditors of the bank.

The manner in which the assets of an insolvent National bank are to be distributed is entirely controlled by Federal statutes. State statutes relating to the distribution of assets of closed banks can have no application to the assets of National banks: Old Company's Lehigh, Inc., v. Meeker et al., 71 F. (2d) 280 (C. C. A. 2d, 1934) ; Spradlin v. Royal Mfg. Co., 73 F. (2d) 776 (C. C. A. 4th, 1934).

The claim of the executor for a set-off or rebate in the sum of $472.16 against the claim of the receiver of the Sixth National Bank should, therefore, not have been allowed, and the exceptions of the receiver of the Sixth National Bank to the ruling of the learned auditing judge allowing such set-off must be sustained.

LAMORELLE, P. J., dissenting.—I am still of opinion, as set forth in my adjudication, that Cushing was more than a creditor and, therefore, should not be classed only as a creditor, as maintained in the majority opinion; nor do I see that any of the authorities cited bear upon what I deem the real question. Title to the real estate was in the bank by deed unrecorded; the record title was in Cushing, and because of the law of this Commonwealth the holder of the recorded title may be compelled to pay the taxes on real estate. Such tax Cushing had to pay, but between him and the bank it was the bank's debt, and in creating a fund for bank creditors, he should not be penalized by what, in effect, is a double, or at least partially double payment; in short, he should be substituted for the bank and the fund he helps now to create for creditors (and for creditors only) should be depleted to the extent that the bank and its creditors benefit, and that is his double payment. I would dismiss the exceptions.